BUCHALTER
A Professional Corporation
ARTIN BETPERA (SBN: 244477)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant
Gen Digital, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Robert Conohan,<br><br>Plaintiff,<br><br>vs.<br><br>Gen Digital, Inc.; and Does 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:24-cv-06894-MCS-PVC<br><br>**DEFENDANT GEN DIGITAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. P. 12(b)(2) & 12(b)(6)]**<br><br>Date: February 3, 2025<br>Time: 9:00 a.m.<br>Dept: 7C<br><br>Judge: Mark C. Scarsi |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 3, 2025, at 9:00 a.m. in Courtroom 7C or as soon thereafter as the matter may be heard in the above-entitled court, located at First Street Courthouse, 350 W. 1st Street, Courtroom 7C, 7th Floor, Los Angeles, California, 90012, Defendant Gen Digital, Inc. ("Gen") will move the Court to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2) on the basis that this Court lacks personal jurisdiction over Gen. In the alternative, Gen will move to dismiss Plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Gen's motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the pleadings and papers filed herein, and such further argument and matters as may be offered at the time of the hearing of this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 11, 2024.

DATED: November 6, 2024

BUCHALTER
A Professional Corporation

By: /s/Artin Betpera
ARTIN BETPERA

Attorneys for Defendant
Gen Digital, Inc.

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 8

II. SUMMARY OF COMPLAINT ........ 10

III. APPLICABLE LEGAL STANDARDS ........ 11

A. Legal Standard for Fed. R. Civ. P. 12(b)(2) Motion to Dismiss ........ 11

B. Legal Standard for Fed. R. Civ. P. 12(b)(6) Motion to Dismiss ........ 12

IV. PLAINTIFF HAS FAILED TO MEET HIS BURDEN TO ESTABLISH A PRIMA FACIE CASE OF PERSONAL JURISDICTION OVER GEN ........ 12

A. Plaintiff Cannot Meet His Burden to Establish General Jurisdiction Because Gen Is Not at Home in California ........ 12

B. Plaintiff Cannot Meet His Burden to Establish Specific Jurisdiction Because Gen Did Not Purposefully Direct Any Acts at California ........ 13

V. THE LEGISLATURE DID NOT INTEND TO REGULATE INTERNET TRACKING SOFTWARE UNDER PENAL CODE § 638.51, THEREFORE, PLAINTIFF CANNOT PLAUSIBLY PLEAD GEN USED A TRACK AND TRACE DEVICE ........ 16

A. The Plain Language of Penal Code § 638.50, When Considered in the Context of the Legislature's Statutory Scheme, Does Not Apply to Tracking Software Installed on a Website ........ 17

B. The Court May Properly Consider the Legislative History of PC § 638.51, Which Provides Compelling Evidence That the Legislature Solely Intended to Regulate Devices Which Log the Telephone Numbers of Incoming Calls to a Tracked Party's Telephone Line ........ 21

1. California's Rules of Statutory Construction Authorize The Court to Consider The Legislative History of PC § 638.51 .....21

2. The Legislative History of PC § 638.51 Demonstrates That the Legislature Only Intended to Regulate Devices Installed on Telephone Lines That Collect Telephone Number Information .....22

C. One Prior Court Has Found That a Trap and Trace Device May Encompass Website Software, But Its Ruling Is Unpersuasive and Should Not Be Followed .....25

VI. CONCLUSION .....26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alejo v. Torlakson*,
212 Cal. App. 4th 768 (Cal. Ct. App. 2013) ........ 17, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 12

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ........ 11, 12, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 12

*Bitner v. Dep't of Corr. & Rehab.*,
87 Cal. App. 5th 1048 (2023) ........ 19

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ........ 13

*Dunlop v. Tremayne*,
62 Cal. 2d 427 (Cal. 1965) ........ 18

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ........ 11, 12

*Gomez v. Superior Ct.*,
54 Cal. 4th 293 (Cal. 2012) ........ 17

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
250 F. Supp. 3d 438 (N.D. Cal. 2017) ........ 21

*Heiting v. Marriott Int'l, Inc.*,
No. 2:23-CV-10822-JLS-MAA, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024) ........ 13, 14, 15

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ........ 13

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023) ............................................................12

*Moody v. C2 Educ. Sys. Inc.*,
No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) ............................................................25, 26

*Muto v. Fenix Int'l Ltd.*,
No. 5:22-CV-02164-SSS-DTBX, 2024 WL 2148734 (C.D. Cal. May 2, 2024) ............................................................14, 15

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ............................................................11

*People v. Martin*,
237 Cal. App. 2d 770 (Ct. App. 1965) ............................................................18

*People v. Mutter*,
1 Cal. App. 5th 429 (Cal. Ct. App. 2016) ............................................................22

*People v. Superior Ct. (Cervantes)*,
225 Cal. App. 4th 1007 (Cal. Ct. App. 2014) ............................................................18, 19

*People v. Valencia*,
3 Cal. 5th 347 (Cal. 2017) ............................................................20, 22

*Sacco v. Mouseflow, Inc.*,
No. 220CV02330TLNKJN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ............................................................14

*Times Mirror Co. v. Superior Ct.*,
53 Cal. 3d 1325 (Cal. 1991) ............................................................21

*Turnacliff v. Westly*,
546 F.3d 1113 (9th Cir. 2008) ............................................................17

*Upland Police Officers Assn. v. City of Upland*,
111 Cal. App. 4th 1294 (Cal. Ct. App. 2003) ............................................................19

*Walden v. Fiore*,
571 U.S. 277 (2014) ............................................................13

**Statutes**

Fed. R. Civ. P. 12(b)(2) ........ 8, 11
Fed. R. Civ. P. 12(b)(6) ........ 8, 10, 12
Pen. Code § 630 ........ 14
Pen. Code § 637.2 ........ 16
Pen. Code § 637.2(a) ........ 16
Pen. Code § 638.50 ........ 8, 9, 16, 17, 18, 19, 20, 26
Pen. Code § 638.50(c) ........ 10
Pen. Code § 638.51 ........ 8, 9, 10, 13, 16, 18, 20, 21, 22, 24
Pen. Code § 638.51(a) ........ 10, 16, 18
Pen. Code § 638.51(c) ........ 16
Pen. Code § 638.52 ........ 16, 19, 20
Pen. Code § 638.52(a) ........ 16, 20
Pen. Code § 638.52(d) ........ 9, 16, 20, 24, 25

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff has filed a putative class action against Defendant Gen Digital, Inc. ("Gen") on the basis that Gen violated California Penal Code § 638.51 by allegedly installing certain tracking software on its own website. Gen is a Delaware corporation with its principal place of business in Arizona. Plaintiff does not allege that Gen is subject to general personal jurisdiction in California, or that Gen did anything directed to the State of California that would establish specific personal jurisdiction. The only action Plaintiff alleges Gen took was to have a website, accessible from anywhere in the United States, on which it installed tracking software. These allegations do not suffice to establish that this Court has specific personal jurisdiction over Gen. As such, the Court should dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2).

Should the Court find that it has personal jurisdiction over Gen, Gen alternatively moves this Court for dismissal under Fed. R. Civ. P. 12(b)(6). Plaintiff claims that Gen violated Penal Code § 638.51 by installing a "trap and trace device" on its website without a court order. Penal Code § 638.50 defines a "trap and trace device" as a "device or process that captures incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of wire or electronic communication." Plaintiff theorizes that the tracking software allegedly installed by Gen's on its own website constitutes a "trap and trace device," because it allows Gen to track a user's activity on the website, and uses that information to ascertain the identity of the user.

However, if Plaintiff's theory is correct—that a trap and trace device can be software installed by a person *on their own device*, and which allows that person to ascertain the identity of people who call or access that device—then that effectively means the Legislature has outlawed the use of caller identification, and turned every

cell-phone carrying Californian into a criminal. This is because the caller-identification function of a cell phone checks all the boxes of plaintiff's isolated interpretation of a "trap and trace device": it is a process, it captures incoming electronic impulses, and it identifies the originating number of a wire communication.

This absurd result is attributable to Plaintiff's isolated reading of the statutory definition of a trap and trace device. The problem with Plaintiff's reading is that the Legislature's definition has two giant gaps that cannot be filled without reference to related penal code provisions. Penal Code § 638.50 states that a "trap and trace device" is a device that "captures incoming or other impulses." This begs the question—captures *from where*? Penal Code § 638.51 prohibits any person from "install[ing]," or "us[ing]" a trap and trace device. Installing or using *on what*? Devices are not "installed" in a vacuum. They must be installed on *something* owned by *someone*. But the Legislature did not specify that something or someone in Penal Code §§ 638.50 or 638.51.

Under California's rules of statutory construction, these provisions of the Legislature's enactment cannot be read in isolation. And these critically important gaps are filled by Penal Code § 638.52(d), which specifies that any order authorizing the use of a trap and trace device *must* specify: (1) the number and physical location *of the telephone line to which the trap and trace device is to be installed*; and (2) the identity of the person *in whose name the telephone line is listed to which the trap and trace device is to be attached*. These requirements establish that, in enacting Penal Code § 638.51, the Legislature intended to prohibit the installation of a trap and trace device on the telephone line of a person whose incoming phone call activity is being tracked. Contrary to Plaintiff's theory, the Legislature did not intend to enact a wholesale prohibition on the installation of tracking software by a website owner on their own website.

A criminal statute like Penal Code § 638.51 must be interpreted strictly, and

in a way that avoids absurdly turning every cell phone carrying Californian into a criminal. Plaintiff's interpretation of Section 638.51 throws these important rules of statutory construction out the window. As such, Plaintiff has failed to plausibly plead that Gen used a "trap and trace device," and his complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

## II. <u>SUMMARY OF COMPLAINT</u>

Gen is a Delaware corporation, with its principal place of business in Tempe, Arizona. Complaint, ¶ 5; Request for Judicial Notice ("RJN"), Exhibit 1. Plaintiff alleges that Gen "has installed on its Website software created by TikTok in order to identify website users." Complaint, ¶ 8. According to the complaint, this software application "collects as much data as it can," about an individual's visit to the website, then "matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." Complaint, ¶ 9. Plaintiff claims that the data gathered by this software application allegedly installed on Gen's website includes "device and browser information, geographic information, referral tracking, and url tracking." Complaint, ¶ 11. Plaintiff does not allege that this software is installed on *his* device, but instead operates by "running code or 'scripts' on [*Gen's*] website to send user details to TikTok." *Id*.

Plaintiff alleges that this "code" or "script" functions by first collecting information "the moment a user lands on [Gen's] Website." Complaint, ¶ 12. From there, the software application allegedly cross-references the information collected from the user's visit with information apparently available from *other* websites to determine the identity of the website user. Complaint, ¶ 13.

Based upon these allegations, Plaintiff claims that the aforementioned software application constitutes a "trap and trace" device as defined under California Penal Code § 638.50(c), and that Gen's alleged use of this software without a court order violated Penal Code § 638.51(a). Complaint, ¶¶ 16-21.

/ / /

## III. APPLICABLE LEGAL STANDARDS

### A. Legal Standard for Fed. R. Civ. P. 12(b)(2) Motion to Dismiss

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citation omitted). "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Id*. The California long-arm statute requires compliance with due process requirements. *Id*. Under those requirements, a non-resident defendant must have "minimum contacts with the forum state such that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id*. at 1155.

Under the minimum contacts analysis, a court may exercise either general or specific jurisdiction over a defendant. A court may exercise general jurisdiction only when a defendant is "essentially at home" in the State. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). A corporation is at home in its "place of incorporation and principal place of business." *Id.*

A court may exercise specific jurisdiction over a foreign defendant if the plaintiff's claims "arise out of or relate to the defendants' contact with the forum." *Id*. at 359. The Ninth Circuit has articulated a three-part test to determine if a court may exercise specific jurisdiction over a nonresident defendant: "(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (cleaned up).

The plaintiff bears the burden of satisfying the first two criteria of this test.

*Id*. If the plaintiff satisfies the criteria, then "the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id*. at 1068-69 (cleaned up). To satisfy their burden, a plaintiff must "make a prima facie showing," through "facts that, if true, would support jurisdiction over the defendant." *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 962 (C.D. Cal. 2023).

### B. Legal Standard for Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This includes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Further, "courts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Id.* at 678 – 79.

## IV. PLAINTIFF HAS FAILED TO MEET HIS BURDEN TO ESTABLISH A PRIMA FACIE CASE OF PERSONAL JURISDICTION OVER GEN

### A. Plaintiff Cannot Meet His Burden to Establish General Jurisdiction Because Gen Is Not at Home in California

"A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). "An individual is subject to general jurisdiction in her place of domicile. And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business." *Id*. at 358-59 (cleaned up).

Plaintiff does not make any allegations in the Complaint that would support general personal jurisdiction. Moreover, Gen's place of incorporation is Delaware, and its principal place of business is in Arizona. Complaint, ¶ 5; RJN, Exhibit 1. As such, this Court does not have general personal jurisdiction over Gen.

### B. <u>Plaintiff Cannot Meet His Burden to Establish Specific Jurisdiction Because Gen Did Not Purposefully Direct Any Acts at California</u>

Plaintiff's claim for violation of Penal Code § 638.51 sounds in tort, and is akin to a common law claim for invasion of privacy. For cases sounding in tort, District Courts "employ the purposeful direction test . . . often referred to as the 'effects' test." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). To be subject to specific jurisdiction, a defendant "must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be sustained in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Gen's argument will focus on the second prong of this test.

The "express aiming" prong is concerned with "whether the defendant's conduct connects him to the forum in a meaningful way," and "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In the context of cases such as this one involving website operations:

> [O]peration of an interactive website does not, by itself, establish express aiming. Otherwise, every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible, whether or not the seller actually consummated a sale. That result would be too broad to comport with due process.

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023).

As such, "something more . . . directly targeting the forum," is required "to satisfy the express aiming prong." *Id*. Where, as here, "the website itself is the <u>only</u> jurisdictional contact," the court's "analysis turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Id*. Courts do not focus on "attenuated contacts," including those "unrelated to [the plaintiff's] privacy-related harm." *Heiting v. Marriott Int'l, Inc.*, No. 2:23-CV-10822-JLS-MAA, 2024 WL 3751276, at *4 (C.D. Cal. Aug. 5, 2024). Instead,

a court should "look[] only to the contacts from which the alleged harm arose: namely, [the defendant's] role in operating the website as related to the covert collection, processing, and distribution of [the plaintiff's] data." *Id*.

The claims in *Heiting* similarly arose from plaintiff's allegations that the defendant violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq. ("CIPA"), by employing tracking software on its website which transcribed and shared the plaintiff's chat communications with a third party. *Id*. at 1. The court held that the foreign defendant's operation of its website was not sufficient to confer specific personal jurisdiction over the defendant. *Id*. at *5. The defendant did not "operate[] its website to specifically target the California market or otherwise," and its website operations did not otherwise "distinguish California from any other state." *Id*.

Similarly, *Sacco v. Mouseflow, Inc.*, No. 220CV02330TLNKJN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) arose from claims by the plaintiff that the defendant violated CIPA by using tracking software on its website. *Id*. at *1. The court found that the defendant's operation of a website which tracked users located in California was not, by itself, sufficient to satisfy "express aiming." *Id*. at *5. This was because the tracking "would have occurred no matter the state Plaintiff was in . . . Defendant did nothing specifically directed at California or California residents to tether it to this forum." *Id*.

Lastly, the court in *Muto v. Fenix Int'l Ltd.*, No. 5:22-CV-02164-SSS-DTBX, 2024 WL 2148734 (C.D. Cal. May 2, 2024) held that the defendant's operation of an interactive website was not, without more, sufficient to establish specific personal jurisdiction. *Id*. at *4. The plaintiff had failed to meet their burden to demonstrate the website had a "forum-specific focus or [that] the defendant exhibited an intent to cultivate an audience in the forum." *Id*. (cleaned up). The fact that "a significant number of California residents visited and purchased subscriptions through Defendants' website [was] not enough to carry [plaintiff's]

burden in this inquiry." *Id.*

Plaintiff alleges in his complaint that Gen operates the www.us.norton.com website, which is "an online platform that sells antivirus, malware, ransomware, and hacking protection services." Complaint, ¶ 5. He vaguely asserts this Court has personal jurisdiction over Gen because Gen "has purposefully directed its activities to the Central District of California by regularly engaging with individuals in California through this website," and Gen's "illegal conduct is directed at and harms California residents[.]" Complaint, ¶ 2.

These conclusory allegations are insufficient to satisfy plaintiff's burden to establish a prima facie case of personal jurisdiction. The fact that Gen "regularly engaged," or even sold products to California residents is not enough to meet plaintiff's burden. *Muto*, 2024 WL 2148734 at *4. At best, Plaintiff has alleged that Gen operates a website on which it employs tracking software. However, Plaintiff does not allege that this software targets California residents over residents located in other states. Nor does Plaintiff allege that Gen's website operations "distinguish California from any other state." *Heiting*, 2024 WL 3751276, at *4. To the contrary, Plaintiff alleges in her complaint that tracking software allegedly installed on Gen's website generally tracks "Americans", meaning the software tracks individuals regardless of the state in which they reside. See Complaint, ¶ 11.

Based upon the above authorities, the mere fact that Gen operates a website accessible by residents of California is not, by itself, enough to meet plaintiff's burden of establishing a prima facie case of purposeful direction. As such, this Court lacks specific jurisdiction over Gen.

/ / /

/ / /

/ / /

/ / /

## V. THE LEGISLATURE DID NOT INTEND TO REGULATE INTERNET TRACKING SOFTWARE UNDER PENAL CODE § 638.51, THEREFORE, PLAINTIFF CANNOT PLAUSIBLY PLEAD GEN USED A TRACK AND TRACE DEVICE

California Penal Code § ("PC") 638.51 provides that "a person may not install or use a . . . trap and trace device without first obtaining a court order…" PC § 638.51(a). Violations of Section 638.51(a) are punishable by up to one year imprisonment in the county jail. PC 638.51(c). PC § 637.2 also provides a private right of action, under which individuals may seek $5,000 in statutory damages per violation of Section 638.51. PC § 637.2(a).

Under PC § 638.50, a "trap and trace device" is:

> [A] device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

PC § 638.52 sets forth the requirements for obtaining a court order to use a trap and trace device. First, only a "peace officer may make an application to a magistrate for an order . . . authorizing or approving the installation and use of a . . . trap and trace device." PC 638.52(a). Second, the application must describe how the information to be obtained from the trap and trace device relates to an ongoing criminal investigation. *Id*.

Section 638.52(d) requires any order authorizing the use of a trap and trace device to specify, *inter alia*: (1) the identity of "the person to whom is leased or in whose name is listed the telephone line to which the . . . trap and trace device is to be attached;" (2) the identity of "the person who is subject of the criminal investigation; and (3) the "number," and "physical location of the telephone line to which the . . . trap and trace device is to be attached."

The outcome of this motion turns on the Court's interpretation of the words "trap and trace device"—specifically, whether the Legislature meant those words to encompass tracking software installed on a website by its owner. Federal courts

interpreting California state law "apply California's rules of statutory construction." *Turnacliff v. Westly*, 546 F.3d 1113, 1117-18 (9th Cir. 2008). The "ultimate task in statutory interpretation is to ascertain the legislature's intent." *Id*. at 1118. California courts "have established a process of statutory interpretation to determine legislative intent that may involve up to three steps." *Alejo v. Torlakson*, 212 Cal. App. 4th 768, 786–87 (Cal. Ct. App. 2013).

First, courts "scrutinize the actual words of the statute, giving them a plain and commonsense meaning. If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary." *Gomez v. Superior Ct.*, 54 Cal. 4th 293, 300 (Cal. 2012).

"If the interpretive question is not resolved in the first step, we proceed to the second step of the inquiry." *Alejo*, 212 Cal. App. 4th at 787 (cleaned up). At this step, courts "may turn to secondary rules of interpretation, such as maxims of construction," together with a statute's legislative history. *Id*. "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." *Id*. (cleaned up).

At the last step of the process, "[i]f ambiguity remains after resort to secondary rules of construction and to the statute's legislative history," then courts will "apply reason, practicality, and common sense to the language at hand." *Id*. (cleaned up).

### A. The Plain Language of Penal Code § 638.50, When Considered in the Context of the Legislature's Statutory Scheme, Does Not Apply to Tracking Software Installed on a Website

At the first step of the process, "a court may determine whether the literal meaning of the statute comports with its purpose." *Alejo*, 212 Cal. App. 4th at 787. "Thus, although the words used by the Legislature are the most useful guide to its intent, we do not view the language of the statute in isolation. Rather, we construe the words of the statute in context, keeping in mind the statutory purpose." *Id*.

(cleaned up). "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." *People v. Superior Ct. (Cervantes)*, 225 Cal. App. 4th 1007, 1014 (Cal. Ct. App. 2014). Moreover, a criminal statute such as PC § 638.51 "requires strict interpretation." *Dunlop v. Tremayne*, 62 Cal. 2d 427, 429 (Cal. 1965); see also *People v. Martin*, 237 Cal. App. 2d 770, 772 (Ct. App. 1965) ("Statutes and regulations from which criminal liability flow require . . . strict construction, and should be plainly written to give fair notice.")

The stated purpose of PC § 638.51 is to require a court order for the use of a "trap and trace device." PC 638.51(a). The statutory definition of a "trap and trace device" is broken down as follows: (1) a device; (2) that captures the incoming electronic or other impulses; (3) that identify the originating number or other dialing, routing, or signaling information; (4) which information is reasonably likely to identify the source of a wire or electronic communication. PC § 638.50.

The Legislature's definition of a "trap and trace device" is silent in two crucial respects. First, the definition does not delineate on whose device or line the trap and trace device must be installed. Did the Legislature mean the device or property of the person being tracked, the one doing the tracking, or both? Second, the definition does not specify the type of device on which the instrument must be installed. Did the Legislature intend to cover devices installed on a landline telephone? A cellular telephone line? Computer devices? Website servers? Pagers? All of the above?

Importantly, the statutory definition of a trap and trace device cannot be read in isolation, and without regard for these two important elements. But that is precisely what Plaintiff must advocate when advancing his extraordinarily expansive interpretation of this criminal statute. Indeed, given the aforementioned gaps in the Legislature's definition, it is no stretch to say that if the literal words of

the trap and trace definition are read in isolation, the statute would turn every cell-phone-carrying Californian into a criminal.

This is because the caller-identification function of a cell phone checks all the boxes of the words used to define a "trap and trace" device. Is caller identification a device or process? Check. Does it capture incoming electronic impulses? Check (it captures incoming telephone calls). Does it identify the originating number of the source of a wire communication? Check (it identifies the telephone number of the person making the incoming call to the cell phone). The same can even be said of a cell phone's call log feature, which is likewise a process that records incoming wire communications, and identifies the source (i.e. the telephone number) of that communication. So, the literal words used to define a trap and trace device—when read in isolation—effectively outlaw the use of cell phones with caller ID. This is precisely the sort of "absurd result[]," that the Court must seek to avoid when interpreting what the Legislature meant by the words "trap and trace device." *Bitner v. Dep't of Corr. & Rehab.*, 87 Cal. App. 5th 1048, 1062, (2023).

However, the Court need not consider the Legislature's amorphous definition of a trap and trace device in isolation. Instead, California's rules of statutory construction guide courts to consider other "provisions relating to the same subject matter [and] harmonize[] [them] to the extent possible." *Cervantes*, 225 Cal. App. 4th at 1014; see also *Upland Police Officers Assn. v. City of Upland*, 111 Cal. App. 4th 1294, 1304 (Cal. Ct. App. 2003) ("we do not construe statutes in isolation, but rather read every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.") These principles require the Court to consider PC § 638.52, which sets forth the requirements for obtaining a court order to use a trap and trace device. Any such order must:

1. Be made pursuant to an application by a peace officer, which describes how the information to be obtained from the trap and trace device relates to an ongoing criminal investigation;
2. Identify the subscriber of the "telephone line to which the . . . trap and trace device is to be attached;"
3. Identify "the person who is subject of the criminal investigation;"
4. Identify the "number," and "physical location of the telephone line to which the . . . trap and trace device is to be attached."

PC § 638.52(a), (d).

When PC §§ 638.50, 638.51, and 638.52 are read together and harmonized, it becomes evident that when the Legislature used the words "trap and trace device" it meant a device that is attached to a tracked party's telephone line (not a website), which tracks incoming or outgoing telephone calls to that specific telephone line (not website browsing activity), as part of a criminal investigation (not for general commercial marketing purposes).

There is yet another problem with Plaintiff's interpretation: applying PC § 638.51 in the manner urged by Plaintiff would effectively render the requirements of PC § 638.52 surplusage. *People v. Valencia*, 3 Cal. 5th 347, 357 (Cal. 2017) ("a construction making some words [of a statute] surplusage is to be avoided." (cleaned up).) Why would the Legislature enact these requirements in the first place if a trap and trace device was something other than a device attached to the tracked party's telephone line? Indeed, if the Legislature intended to require a website owner to obtain a court order to install a certain type of software on its own website, then it would not have mandated that the order spell out details about the *telephone line* on which the trap and trace device is to be installed. PC § 638.52(d). To interpret the meaning of the words "trap and trace device" in the manner advocated by Plaintiff would render the requirements of Section 638.52(d) meaningless.

In sum, when the plain language of PC §§ 638.50-638.52 is read together in its proper context, harmonized, *and construed strictly as a criminal statute must be*, there is but one reasonable interpretation of the words "trap and trace device": a device which: (1) is installed on the *telephone line*; (2) of a person who is being tracked; and (3) which tracks the telephone numbers of inbound calls to that telephone line. The alternative interpretation advanced by Plaintiff would effectively outlaw the use of caller identification, and is irreconcilable with each of the rules of statutory interpretation discussed above.

The Court's inquiry may therefore conclude at the first step of the statutory interpretation process. However, to the extent there remain any doubts about what the Legislature intended, the legislative history of PC § 638.51 makes it crystal clear that the Legislature never intended to regulate a website operator's installation of software on its own website.

**B. <u>The Court May Properly Consider the Legislative History of PC § 638.51, Which Provides Compelling Evidence That the Legislature Solely Intended to Regulate Devices Which Log the Telephone Numbers of Incoming Calls to a Tracked Party's Telephone Line</u>**

1. <u>California's Rules of Statutory Construction Authorize The Court to Consider The Legislative History of PC § 638.51</u>

Courts may consider a statute's legislative history "[w]hen the wording of the statute is ambiguous or permits more than one reasonable interpretation." *GreenCycle Paint, Inc. v. PaintCare, Inc*., 250 F. Supp. 3d 438, 453 (N.D. Cal. 2017) (citing to *Alejo v. Torlakson*, 212 Cal. App. 4th 768, 787 (Cal. Ct. App. 2013)). "[W]hile ambiguity is generally thought to be a condition precedent to interpretation, this is not always the case. The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole." *Times Mirror Co. v. Superior Ct*., 53 Cal. 3d 1325, 1335

(Cal. 1991). The Court may properly consider the legislative history of PC § 638.51 for each of these reasons.

First, assuming that Plaintiff's interpretation of "trap and trace device" is reasonable—which, for the reasons discussed above, it is not—then, at best, the statute is susceptible to two different interpretations. Plaintiff's interpretation, which is a product of construing the definition of "trap and trace" in isolation, and Defendant's interpretation, which is supported by the harmonization of PC §§ 638.50-638.52.

Second, the above examination of the Legislature's definition of a "trap and trace device" demonstrates that the definition is imprecise and ambiguous. "[S]tatutory language, even if it appears to have a clear and plain meaning when considered in isolation, may nonetheless be rendered ambiguous when the language is read in light of the statute as a whole or in light of the overall legislative scheme." *People v. Valencia*, 3 Cal. 5th 347, 360 (2017). And it is important to note that if such an ambiguity exists, then the rule of lenity applies, and the Court must interpret this "ambiguous criminal statute in the defendant's favor." *People v. Mutter*, 1 Cal. App. 5th 429, 436 (Cal. Ct. App. 2016).

Third, it is appropriate for the Court to consider the legislative history of PC § 638.51 to avoid absurd results. Results which, if Plaintiff's interpretation were accepted, would turn every person with a cell phone in their pocket capable of caller identification into a criminal guilty of a misdemeanor.

2. <u>The Legislative History of PC § 638.51 Demonstrates That the Legislature Only Intended to Regulate Devices Installed on Telephone Lines That Collect Telephone Number Information</u>

The restrictions on the use of trap and trace devices under PC § 638.51 were passed by the Legislature in 2016 through State Assembly Bill ("AB") 929. The author of the bill summarized the purpose of AB 929 as follows:

> As technology advances, criminals are becoming more and more sophisticated in their use of technology to commit crimes and avoid law enforcement. As a result, law enforcement officials have a variety of electronic tools to counter this and help them apprehend criminals in this age of rapidly changing technology.
>
> One of the tools available to law enforcement is called a "pen register" which allows law enforcement officers to record all outgoing numbers from a particular telephone line. In addition, another tool law enforcement uses is called a "trap and trace device" which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers. Both pen registers and trap and trace devices do not record audio or text messages and cannot be used to obtain real-time location data on a cellular telephone. But these tools are extremely useful for law enforcement in situations such as gang and narcotic investigations.
>
> AB 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations. The bill will require law enforcement officers to obtain a court order before using such devices by providing a judge with information that the use of information is relevant to an ongoing criminal investigation, and that there is probable cause to believe that the pen register or trap and trace device will lead to obtaining evidence of a crime.

Bill Analysis, A.B. 929 (2015) at p. S (Request for Judicial Notice, Ex. 2) (hereinafter "A.B. 929 Analysis").

There are two important observations to draw from this statement of purpose. First, the Legislature clearly understood that a trap and trace device is a device that "record[s] what numbers have called **<u>a specific telephone line</u>**." *Id*. (emphasis added). Second, the Legislature expressed that its purpose in enacting the statute was to "authorize state and local law enforcement officers to use . . . trap and trace devices." *Id*. Accordingly, the intent of the Legislature was not to *restrict* the ability of common citizens to install software *on their own devices* which allow them to identify who is accessing or calling their device. Instead, it was to authorize law enforcement to obtain a court order to install a device *on the telephone line of a person being tracked* as part of a criminal investigation.

Notably, the Legislature mentioned absolutely <u>nothing</u> about regulating the use of tracking software installed by website operators on their own websites. Indeed, neither the internet nor websites were mentioned anywhere in the

Legislative history of the statute. The statute was passed in 2015, at a time when this technology existed—but the technology was nowhere on the Legislature's radar when it passed PC §§ 638.50-638.52 in 2016. And if the Legislature had truly intended to enact legislation restricting a website operator's installation of ubiquitous tracking software *on their own website* (as opposed to someone else's device), then it stands to reason that there would have been some mention, contemplation, or discussion of such technology in the legislative history.

Lastly, throughout the legislative history, the Legislature repeatedly expressed its understanding that a "trap and trace device" is a device installed *on a telephone line* which "records the originating telephone numbers of the calls dialed into a particular telephone line." A.B. 929 Analysis, p. S. The Legislature further explained its understanding as follows:

> Pen registers and track and trace devices generally track incoming and outgoing telephone calls. They are often utilized by law enforcement to track which people in an investigation are communicating with one another and at what times. Unlike a wiretap authorization, pen registers and track and trace devices do not provide law enforcement with the content of the messages which are transmitted.

A.B. 929 Analysis, pp. T-U. Elsewhere in the legislative history, the Legislature again expressed its understanding that "a 'trap and trace device' records the originating telephone numbers of the calls dialed into a particular telephone line." *Id*. at p. V.

The legislative history of PC § 638.51 helps shed light on what the Legislature meant by the words "trap and trace device." It also helps explain why the Legislature made it mandatory for an order authorizing the use of a trap and trace device to spell out the details of the *telephone line* on which the device would be installed. PC § 638.52(d). In sum, when considering the language of PC § 638.50-638.52, together with the legislative history, a trap and trace device is a device which: (1) is installed on the telephone line; (2) of a person who is being tracked; (3) which tracks the telephone numbers of incoming calls to that telephone

line.

The pixel tracking software Plaintiff is alleging that Gen used on its own website is not even in the same universe as the trap and trace devices that the Legislature intended to regulate when passing AB 929. The software is not alleged to have been installed on a telephone line, it is not alleged to have been installed on Plaintiff's device, and it is not alleged to have tracked telephone numbers from inbound calls to Plaintiff's telephone line.

### C. **One Prior Court Has Found That a Trap and Trace Device May Encompass Website Software, But Its Ruling Is Unpersuasive and Should Not Be Followed**

In *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024), the court considered whether tracking software that was allegedly installed by a website operator on their own website servers constituted a "trap and trace device." The court found that the software "may qualify" as such a device, "at least at the motion to dismiss stage." *Id.* at *3. The court's interpretation is not moored to California's rules of statutory construction, and is unpersuasive.

First, the court recognized that any order authorizing the use of a trap and trace device "must include certain information about the telephone line to which the . . . trap and trace device is to be attached." *Id.* at *2. However, it did not take the next step of harmonizing these requirements with the statutory definition of a trap and trace device, nor did it consider how its reading would render the requirements of PC § 638.52(d) superfluous. Indeed, these rules of statutory construction did not seem to factor in at all in the court's interpretation.

Second, implicit in the court's finding was the fact that a "trap and trace device" includes a process that one might install on *their own device* that identifies the source of incoming telephone calls or electronic signals. But it did not recognize or grapple with the absurd results discussed above, which would sweep cellular and

landline telephone devices with common caller identification functionality within the definition of a “trap and trace device.”

Lastly, the court elected to read the statutory definition of PC § 638.50 broadly, and found it to be “expansive.” *Id.* at 2. But, as set forth above, when a court is construing a statute that carries criminal penalties, it must do the opposite of what the court did in *Moody*, and construe that statute strictly. Again, these important rules of statutory construction did not seem to factor into the court’s interpretation. And those rules become particularly important where the court’s broad and expansive reading of a criminal statute would subject ordinary citizens to criminal penalties for carrying around a cell phone with caller-identification functionality in their pocket.

## VI. CONCLUSION

For the foregoing reasons, Gen Digital respectfully requests that the Court grant its Motion to Dismiss.

DATED: November 6, 2024

BUCHALTER
A Professional Corporation

By: /s/Artin Betpera
ARTIN BETPERA

Attorneys for Defendant
Gen Digital, Inc.