BUCHALTER
A Professional Corporation
ARTIN BETPERA (SBN: 244477)
18400 Von Karman Avenue, Suite 80
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant
Gen Digital Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Robert Conohan,<br><br>Plaintiff,<br><br>vs.<br><br>Gen Digital Inc.; and Does 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:24-cv-06894-MCS-PVC<br><br>**DEFENDANT GEN DIGITAL INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. P. 12(b)(2) & 12(b)(6)]**<br><br>Date: February 3, 2025<br>Time: 9:00 a.m.<br>Dept: 7C<br><br>Judge: Mark C. Scarsi |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 3, 2025, at 9:00 a.m. in Courtroom 7C or as soon thereafter as the matter may be heard in the above-entitled court, located at First Street Courthouse, 350 W. 1st Street, Courtroom 7C, 7th Floor, Los Angeles, California, 90012, Defendant Gen Digital Inc. ("Gen") will move the Court to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over Gen. In the alternative, Gen will move to dismiss Plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Gen's motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the pleadings and papers filed herein, and such further argument and matters as may be offered at the time of the hearing of this Motion.

This Motion is made after the conference of counsel under L.R. 7-3 which took place on December 17, 2024[1]. During this conference, counsel thoroughly discussed the legal basis of Gen's jurisdictional challenge under Fed. R. Civ. P. 12(b)(2), and its challenge to the sufficiency of the pleadings under Fed. R. Civ. P. 12(b)(6). The meet and confer process was aided by the fact that the grounds upon which Gen's motion is based were previously set forth in its motion to dismiss Plaintiff's original complaint (Dkt. 13). Counsel for the parties were unable to resolve the challenges raised in Gen's motion through these meet and confer efforts.

DATED: December 20, 2024

BUCHALTER
A Professional Corporation

By: /s/Artin Betpera
ARTIN BETPERA

Attorneys for Defendant
Gen Digital Inc.

---

[1] The undersigned counsel for Gen recognizes that this meet and confer occurred less than seven days prior to the filing of Gen's motion. This was due to the fact that Gen's counsel was out of the office due to a family emergency, and unable to meet and confer until his return to the office on December 17, 2024.

# TABLE OF CONTENTS

**PAGE(S)**


I. INTRODUCTION ....... 9

II. SUMMARY OF COMPLAINT ....... 11

III. PROCEDURAL HISTORY ....... 12

IV. APPLICABLE LEGAL STANDARDS ....... 12

- A. Legal Standard for Fed. R. Civ. P. 12(b)(2) Motion to Dismiss ....... 12
- B. Legal Standard for Fed. R. Civ. P. 12(b)(6) Motion to Dismiss ....... 14

V. PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING A PRIMA FACIE CASE OF PERSONAL JURISDICTION OVER GEN ....... 14

- A. Plaintiff Cannot Meet His Burden to Establish General Jurisdiction Because Gen Is Not "at Home" in California ....... 14
- B. Plaintiff Cannot Meet His Burden to Establish Specific Jurisdiction Because He Lacks Any Plausible Facts that Gen Purposefully Directed Any Acts at California ....... 14

VI. THE LEGISLATURE DID NOT INTEND TO REGULATE INTERNET TRACKING SOFTWARE UNDER PENAL CODE § 638.51, SO PLAINTIFF CANNOT PLAUSIBLY PLEAD GEN USED A "TRACK AND TRACE DEVICE" WITHIN THE MEANING OF THE STATUTORY REGIME ....... 18

- A. The Plain Language of Penal Code § 638.50, When Considered in the Context of the Legislature's Statutory Scheme, Does Not Apply to Tracking Software Installed on a Website ....... 20
- B. The Court May Properly Consider the Legislative History of Penal Code § 638.51, Which Also Shows the Legislature Solely Intended to Regulate Devices which Log the

Telephone Numbers of Incoming Calls to a Tracked Party's Telephone Line ....................24

1. California's Rules of Statutory Construction Authorize The Court to Consider The Legislative History of Penal Code § 638.51 ....................24

2. The Legislative History of Penal Code § 638.51 Demonstrates That the Legislature Only Intended to Regulate Devices Installed on Telephone Lines that Collect Telephone Number Information ....................26

C. Although One District Court Found a Trap and Trace Device to Encompass Website Software, the Ruling Is Neither Controlling Nor Persuasive ....................28

VII. CONCLUSION ....................29

# TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 14

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .......... 13, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 14

*California v. Trump*,
963 F.3d 926 (9th Cir. 2020) .......... 10

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) .......... 15, 17

*Erlenbaugh v. United States*,
409 U.S. 239 .......... 10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 13, 14

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
250 F. Supp. 3d 438 (N.D. Cal. 2017) .......... 24

*Heiting v. Marriott Int'l, Inc.*,
No. 2:23-CV-10822-JLS-MAA, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024) (*Heiting*) .......... 15, 16, 17

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 15

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023) .......... 13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 17

*Moody v. C2 Educ. Sys. Inc.*,
No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) .......... 28

*Muto v. Fenix Int'l Ltd.*,
No. 5:22-CV-02164-SSS-DTBX, 2024 WL 2148734 (C.D. Cal. May 2, 2024) (*Muto*) .......... 16, 17

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .......... 12, 13

*Sacco v. Mouseflow, Inc.*,
No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) .......... 16, 17

*Turnacliff v. Westly*,
546 F.3d 1113 (9th Cir. 2008) .......... 19

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 15

**State Cases**

*Alejo v. Torlakson*,
212 Cal. App. 4th 768 (Cal. Ct. App. 2013) .......... 19, 20, 24

*Bitner v. Dep't of Corr. & Rehab.*,
87 Cal. App. 5th 1048 (Cal. Ct. App. 2023) .......... 22

*Dunlop v. Tremayne*,
62 Cal. 2d 427 (Cal. 1965) .......... 20

*Gomez v. Superior Ct.*,
54 Cal. 4th 293 (Cal. 2012) .......... 19

*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*,
133 Cal. App. 4th 26 (Cal. Ct. App. 2005) .......... 23, 24

*People v. Martin*,
237 Cal. App. 2d 770 (Ct. App. 1965) .......... 20

*People v. Mutter*,
1 Cal. App. 5th 429 (Cal. Ct. App. 2016) .......... 25

*People v. Superior Ct. (Cervantes)*,
225 Cal. App. 4th 1007 (Cal. Ct. App. 2014) (*Cervantes*) .......................... 20, 22

*People v. Valencia*,
3 Cal. 5th 347 (Cal. 2017) .......................... 23, 25

*Times Mirror Co. v. Superior Ct.*,
53 Cal. 3d 1325 (Cal. 1991) .......................... 24

*Upland Police Officers Assn. v. City of Upland*,
111 Cal. App. 4th 1294 (Cal. Ct. App. 2003) .......................... 22

**Federal Statutes**

Fed. R. Civ. P. 12(b)(2) .......................... 9, 12, 16

Fed. R. Civ. P. 12(b)(6) .......................... 9, 11, 14

**State Statutes**

Pen. Code § 630 .......................... 16

Pen. Code § 637.2 .......................... 18

Pen. Code § 638.50 .......................... 9, 12, 25, 28

Pen. Code § 638.51 .......................... 9, 12, 18, 20, 25, 28

Pen. Code § 638.52 .......................... 18, 22, 23, 25, 28

Pen. Code § 638.55 .......................... 27

**Other Authorities**

California, *Big Gains in Californians' Use of Cell Phones, Tablets to Go Online* (June 26, 2013), https://www.ppic.org/press-release/big-gains-in-californians-use-of-cell-phones-tablets-to-go-online/ .......................... 25

Prescott-Martini, *The History and Evolution of Caller ID* (Jan. 24, 2023), https://www.prescott-martini.com/the-history-and-evolution-of-caller-id .......................... 24

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff filed this putative class action against Defendant Gen Digital Inc. ("Gen") alleging it violated California Penal Code section 638.51[2] by allegedly installing certain tracking software on its own website. Gen is a Delaware corporation with its principal place of business in Arizona. Plaintiff does not allege that Gen is subject to general personal jurisdiction in California, or that Gen did anything directed to the State of California that would establish specific personal jurisdiction. The only action Plaintiff alleges Gen took was to have a website, accessible from anywhere in the United States, on which it installed tracking software. Plaintiff's allegations are insufficient to establish this Court's personal jurisdiction over Gen. The Court should therefore correctly dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(2).

Should the Court find it has personal jurisdiction over Gen, Gen alternatively moves this Court for dismissal under Fed. R. Civ. P. 12(b)(6). Plaintiff claims that Gen violated Penal Code § 638.51 by installing a "trap and trace device" on its website without a court order. Penal Code § 638.50 defines a "trap and trace device" as a "device or process that captures incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of wire or electronic communication." Plaintiff theorizes that the tracking software allegedly installed by Gen on its own website is a "trap and trace device," because it lets Gen track a user's activity on the website, and uses that information to determine the identity of the user.

---

[2] California's Penal Code section 638.51 provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order." Cal. Penal § 638.51(a). The law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* at 638.50(c).

However, were Plaintiff's theory correct — that a trap and trace device can be software installed by a person *on their own device*, and which allows that person to ascertain the identity of people who call or access that device — then that effectively means the Legislature has also outlawed the use of caller identification and turned every cell-phone carrying Californian into a criminal. This is because the caller-identification function of a cell phone checks all the same boxes in Plaintiff's isolated interpretation of a "trap and trace device": it is a process, it captures incoming electronic impulses, and it identifies the originating number of a wire communication.

This absurd result can be attributed to Plaintiff's myopic focus on the definition of "trap and trace device," a reading isolated from the rest of the statutory scheme. *Contra*, *California v. Trump*, 963 F.3d 926, 947 (9th Cir. 2020) ("And, as we know, '"statutes addressing the same subject matter' should be construed *in pari materia*."' [Citations.] Under that doctrine, related statutes should 'be construed as if they were one law.' *Erlenbaugh v. United States*, 409 U.S. 239, 243 … (1972)."); see also Scalia & Garner, Reading Law: The Interpretation of Legal Texts, § 24, "The Whole-Text Canon" (Thomson West 2012).

Two important gaps in the legislative definition are filled in elsewhere, yet both are inexplicably disregarded by Plaintiff contrary to the fundamental rules of statutory construction. Penal Code § 638.50 states that a "trap and trace device" is a device that "captures incoming or other impulses." This invites the question—captures *from where*? Penal Code § 638.51 prohibits any person from "install[ing]," or "us[ing]" a trap and trace device. But installing or using *on what*? We know devices are not "installed" in a vacuum but must be installed on *something* owned by *someone*. The Legislature did not specify that something or someone in Penal Code §§ 638.50 or 638.51, however. The correct statutory interpretation requires resort to other provisions, so the statutes are read together "as if they were one law." *Erlenbaugh v. United States*, *supra*, 409 U.S. at 243.

California's rules of statutory construction are consonant: the Legislature's enactment cannot be read in isolation as Plaintiff suggests. Instead, these critically important gaps are filled in by Penal Code § 638.52(d), which specifies that any order authorizing the use of a trap and trace device *must* specify: (1) the number and physical location *of the telephone line to which the trap and trace device is to be installed*; and (2) the identity of the person *in whose name the telephone line is listed to which the trap and trace device is to be attached*. These requirements demonstrate that the Legislature intended when enacting Penal Code § 638.51 to prohibit the installation of a trap and trace device on the telephone line of a person whose incoming phone call activity is being tracked. Contrary to Plaintiff's theory, the Legislature did not intend to enact a wholesale prohibition on the installation of tracking software by a website owner on their own website.

A criminal statute like Penal Code § 638.51 is strictly construed, and it must be done so in a way that avoids the absurd result of turning every Californian who carries a cell phone into a criminal. Plaintiff's interpretation of section 638.51 throws out these fundamental rules, however. This means Plaintiff has abjectly failed to plausibly plead that Gen used a "trap and trace device," subjecting his complaint to dismissal under Fed. R. Civ. P. 12(b)(6).

## II. SUMMARY OF COMPLAINT

Gen is a Delaware corporation, with its principal place of business in Tempe, Arizona. 1st Amend. Compl., Dkt. No. 17 ("FAC"), ¶ 5; Request for Judicial Notice ("RJN"), Ex. 1. Plaintiff alleges that Gen "has installed on its Website software created by TikTok in order to identify website users." FAC, ¶ 9. According to Plaintiff's complaint, this software application "collects as much data as it can," about an individual's visit to the website, then "matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." FAC, ¶ 10. Plaintiff says that the data gathered by a software application allegedly installed on Gen's website includes "device and browser information, geographic

information, referral tracking, and url tracking." FAC, ¶ 11. Remarkably, Plaintiff does *not* allege this software was or is installed on *his* device but operates by "running code or 'scripts' on [*Gen's*] website to send user details to TikTok." *Id*.

Plaintiff contends this "code" or "script" functions by first collecting information "the moment a user lands on [Gen's] Website." FAC, ¶ 12. From there, the software application supposedly cross-references the information collected from the user's visit with information apparently available from *other* websites to determine the identity of the website user. FAC, ¶ 13.

Based on these allegations, Plaintiff claims this software application constitutes a "trap and trace" device under California Penal Code § 638.50(c), and that Gen's alleged use of this software without a court order violated Penal Code § 638.51(a). FAC, ¶¶ 16-21.

## III. PROCEDURAL HISTORY

Plaintiff filed his original complaint on August 14, 2024. Dkt. 1. On November 6, 2024, Gen moved to dismiss under Rules 12(b)(2) and 12(b)(6). Dkt. 13. Rather than oppose Gen's motion, Plaintiff filed the operative FAC on November 27, 2024. Dkt. 17.

His initial pleading and the FAC are nearly identical, however. Plaintiff chose to amend only his putative class definition. *Compare* Compl. ¶ 22, *with* FAC, ¶ 22. Aside from that, Plaintiff's allegations in both pleadings are identical. *See* Compl. & FAC, *passim*.

## IV. APPLICABLE LEGAL STANDARDS

### A. Legal Standard for Fed. R. Civ. P. 12(b)(2) Motion to Dismiss

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citation omitted). "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction

does not violate federal due process." *Id*. The California long-arm statute requires compliance with due process requirements. *Id*. Under those requirements, a non-resident defendant must have "minimum contacts with the forum state such that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id*. at 1155.

Under the minimum contacts analysis, a court may exercise either general or specific jurisdiction over a defendant. A court may exercise general jurisdiction only when a defendant is "essentially at home" in the state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). A corporation is "at home" in its "place of incorporation and principal place of business." *Id*.

A court may exercise specific jurisdiction over a foreign defendant if the plaintiff's claims "arise out of or relate to the defendants' contact with the forum." *Id*. at 359. The Ninth Circuit has developed a three-part test for determining whether a court may exercise specific jurisdiction over a nonresident defendant: "(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (cleaned up).

A plaintiff like Conohan here bears the conjunctive burden of satisfying the first two criteria of this test. *Id*. If the plaintiff satisfies both criteria, then (and only then) does "the burden shift[] to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id*. at 1068–69 (cleaned up). To satisfy their burden, a plaintiff must "make a prima facie showing," through "facts that, if true, would support jurisdiction over the defendant." *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 962 (C.D. Cal. 2023).

**B. Legal Standard for Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This includes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Further, "courts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ….only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Id.* at 678–79.

## V. PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING A PRIMA FACIE CASE OF PERSONAL JURISDICTION OVER GEN

**A. Plaintiff Cannot Meet His Burden to Establish General Jurisdiction Because Gen Is Not "at Home" in California**

"A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, *supra*, 592 U.S. at 358. "An individual is subject to general jurisdiction in her place of domicile. And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business." *Id*. at 358–59 (cleaned up).

Plaintiff alleged nothing in his original complaint that supported general personal jurisdiction over Gen. Gen's place of incorporation is Delaware, and its principal place of business is in Tempe, Arizona. FAC, ¶ 5; RJN, Ex. 1. This Court thus lacks general personal jurisdiction over Gen.

**B. Plaintiff Cannot Meet His Burden to Establish Specific Jurisdiction Because He Lacks Any Plausible Facts that Gen Purposefully Directed Any Acts at California**

A claim like Plaintiff's for an alleged violation of Penal Code § 638.51 sounds in tort, and resembles a common law claim for invasion of privacy. For

cases sounding in tort, this Court "employ[s] the purposeful direction test … often referred to as the 'effects' test." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). To be subject to specific jurisdiction, a defendant "must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be sustained in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Assuming without conceding that Plaintiff has sufficiently alleged an *intentional* act, Plaintiff falls fatally short of meeting Gen's the second conjunctive prong of this test.

The "express aiming" prong focuses on "whether the defendant's conduct connects him to the forum in a meaningful way," and Plaintiff must show "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In cases like this one involving website operations:

> [O]peration of an interactive website does not, by itself, establish express aiming. Otherwise, every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible, whether or not the seller actually consummated a sale. That result would be too broad to comport with due process.

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023).

As such, "something more … directly targeting the forum," is required "to satisfy the express aiming prong." *Id*. Where, as here, "the website itself is the *only* jurisdictional contact," the court's "analysis turns on whether the site had a forum-specific focus, or the defendant exhibited an intent to cultivate an audience in the forum." *Id*. (emphasis added). Courts do not consider "attenuated contacts," including those "unrelated to [the plaintiff's] privacy-related harm," as sufficient to satisfy the express aiming prong. *Heiting v. Marriott Int'l, Inc.*, No. 2:23-CV-10822-JLS-MAA, 2024 WL 3751276, at *4 (C.D. Cal. Aug. 5, 2024) (*Heiting*). Instead, a court "looks only to the contacts from which the alleged harm arose: namely, [the defendant's] role in operating the website as related to the covert collection, processing, and distribution of [the plaintiff's] data." *Id*.

*Heiting* is instructive. There the plaintiff's claims similarly arose from allegations that a defendant violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq. ("CIPA") when it employed tracking software on its website which transcribed and shared the plaintiff's chat communications with a third party. *Heiting*, 2024 WL 3751276, at *1. The district court ruled that the foreign defendant's operation of its website was insufficient to confer specific personal jurisdiction over the defendant. *Id*. at *5. The defendant did not "operate[] its website to specifically target the California market or otherwise," and its website operations did not otherwise "distinguish California from any other state." *Id*.

Consonant is *Sacco v. Mouseflow, Inc.*, No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022). The plaintiff in *Sacco* claimed the defendant had violated CIPA by using tracking software on its website. *Id*. at *1. The district court ruled that the defendant's operation of a website which tracked users in California was, by itself, insufficient to satisfy "express aiming." *Id*. at *5. This was because the tracking "would have occurred no matter the state Plaintiff was in …Defendant did nothing specifically directed at California or California residents to tether it to this forum." *Id*. The court accordingly granted the defendant's Rule 12(b)(2) motion.

The district court in *Muto v. Fenix Int'l Ltd*., No. 5:22-CV-02164-SSS-DTBX, 2024 WL 2148734 (C.D. Cal. May 2, 2024) (*Muto*) similarly held that the defendant's operation of an interactive website, without more, also could not establish specific personal jurisdiction. *Id*. at *4. The plaintiff had failed to meet their burden to show the website had a "forum-specific focus or [that] the defendant exhibited an intent to cultivate an audience in the forum." *Id*. (cleaned up). The allegation that "a significant number of California residents visited and purchased subscriptions through Defendants' website [was] not enough to carry [plaintiff's] burden in this inquiry." *Id*. The court granted defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and dismissed the complaint. *Id.* at *5 &

n.5 ("Because neither Plaintiffs' complaint nor their briefing suggests that the jurisdictional defect identified here is curable, the Court does not grant them leave to amend their pleadings.").

Placed under the same analytical lens, Plaintiff's complaint here is subject to the result as those examined in *Heiting*, *Sacco*, and *Muto*. Plaintiff alleges that Gen operates the www.us.norton.com website, which is "an online platform that sells antivirus, malware, ransomware, and hacking protection services." FAC, ¶ 5. He vaguely asserts this Court has personal jurisdiction over Gen because Gen "has purposefully directed its activities to the Central District of California by regularly engaging with individuals in California through this website," and Gen's "illegal conduct is directed at and harms California residents[.]" FAC, ¶ 2. Although uncontroverted allegations in the complaint must be taken as true, "[t]he plaintiff cannot 'simply rest on the bare allegations of its complaint[.]'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

These conclusory allegations are insufficient to satisfy plaintiff's burden of establishing a prima facie case of personal jurisdiction. That Gen allegedly "regularly engaged," or even sold products to California residents is simply not enough to satisfy plaintiff's burden. *Muto*, *supra*, 2024 WL 2148734, at *4. At most, Plaintiff alleges that Gen operates a website on which it uses tracking software. But that is not enough. Plaintiff lacks any facts that the software he complains of targets California residents over residents in other states. Nor does Plaintiff allege that Gen's website operations "distinguish California from any other state." *Heiting*, 2024 WL 3751276, at *4. The opposite is true: Plaintiff alleges that tracking software supposedly installed on Gen's website generally tracks "Americans," meaning the software tracks individuals regardless of the state in which they reside. See FAC, ¶ 10. This scattershot approach is insufficient under the Ninth Circuit's three-prong test. *Dole Food Co. v. Watts*, *supra*, 303 F.3d at 1111.

Based on the relevant authorities, the mere fact that Gen runs a website accessible by residents of California, without more, is not enough to satisfy plaintiff's burden of establishing a prima facie case of purposeful direction. So this Court correctly dismisses Plaintiff's complaint for lack of specific jurisdiction over Gen.

## VI. THE LEGISLATURE DID NOT INTEND TO REGULATE INTERNET TRACKING SOFTWARE UNDER PENAL CODE § 638.51, SO PLAINTIFF CANNOT PLAUSIBLY PLEAD GEN USED A "TRACK AND TRACE DEVICE" WITHIN THE MEANING OF THE STATUTORY REGIME

California Penal Code section 638.51 provides that "a person may not install or use a … trap and trace device without first obtaining a court order[.]" Cal. Penal § 638.51(a). Alleged violations of § 638.51(a) are punishable by up to one-year imprisonment in the county jail. Cal. Penal § 638.51(c). California Penal Code section 637.2 provides a private right of action by which individuals may seek $5,000 in statutory damages for each violation of section 638.51. Cal. Penal § 637.2(a).

Under California Penal Code section 638.50, a "trap and trace device" is "[A] device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Section 638.52 then sets forth two requirements for obtaining a court order to use a trap and trace device. *First*, only a "peace officer may make an application to a magistrate for an order … authorizing or approving the installation and use of a …trap and trace device." Cal. Penal § 638.52(a). *Second*, the application must describe how the information to be obtained from the trap and trace device relates to an ongoing criminal investigation. *Id*.

/ / /

Section 638.52(d), in turn, requires any order authorizing the use of a trap and trace device to specify, among others (1) the identity of "the person to whom is leased or in whose name is listed the telephone line to which the … trap and trace device is to be attached;" (2) the identity of "the person who is subject of the criminal investigation; and (3) the "number," and "physical location of the telephone line to which the … trap and trace device is to be attached."

So Gen's motion turns on an interpretation of the words "trap and trace device" — specifically, whether the Legislature meant those words to encompass tracking software installed on a website by its owner. Federal courts interpreting California state law "apply California's rules of statutory construction." *Turnacliff v. Westly*, 546 F.3d 1113, 1117-18 (9th Cir. 2008). The "ultimate task in statutory interpretation is to ascertain the legislature's intent." *Id*. at 1118. California courts "have established a process of statutory interpretation to determine legislative intent that may involve up to three steps." *Alejo v. Torlakson*, 212 Cal. App. 4th 768, 786–87 (Cal. Ct. App. 2013).

In the first step of the process, courts "scrutinize the actual words of the statute, giving them a plain and commonsense meaning. If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary." *Gomez v. Superior Ct.*, 54 Cal. 4th 293, 300 (Cal. 2012). "If the interpretive question is not resolved in the first step, we proceed to the second step of the inquiry." *Alejo*, 212 Cal. App. 4th at 787 (cleaned up).

In the second step, courts "may turn to secondary rules of interpretation, such as maxims of construction," together with the statute's legislative history. *Id*. "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." *Id*. (cleaned up).

/ / /

Finally, in the third step of the process, "[i]f ambiguity remains after resort to secondary rules of construction and to the statute's legislative history," then courts will "apply reason, practicality, and common sense to the language at hand." *Id.* (cleaned up).

### A. <u>The Plain Language of Penal Code § 638.50, When Considered in the Context of the Legislature's Statutory Scheme, Does Not Apply to Tracking Software Installed on a Website</u>

At the first step of the process, "a court may determine whether the literal meaning of the statute comports with its purpose." *Alejo*, 212 Cal. App. 4th at 787. "Thus, although the words used by the Legislature are the most useful guide to its intent, we do not view the language of the statute in isolation. Rather, we construe the words of the statute in context, keeping in mind the statutory purpose." *Id.* (cleaned up). "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." *People v. Superior Ct. (Cervantes)*, 225 Cal. App. 4th 1007, 1014 (Cal. Ct. App. 2014) (*Cervantes*); *see also* Scalia & Garner, *supra*, Harmonious-Reading Canon, § 27. Moreover, a criminal statute like § 638.51, which places physical liberty in jeopardy on top of monetary consequences, "requires strict interpretation." *Dunlop v. Tremayne*, 62 Cal. 2d 427, 429 (Cal. 1965); *see also People v. Martin*, 237 Cal. App. 2d 770, 772 (Ct. App. 1965) ("Statutes and regulations from which criminal liability flow require … strict construction and should be plainly written to give fair notice.")

The stated purpose of California Penal Code section 638.51 is to require a court order for the use of a "trap and trace device." Cal. Penal § 638.51(a). The statutory definition of a "trap and trace device" is parsed this way: (1) a device; (2) that captures the incoming electronic or other impulses; (3) that identify the originating number or other dialing, routing, or signaling information; (4) which

information is reasonably likely to identify the source of a wire or electronic communication. Cal. Penal § 638.50.

The Legislature's definition of a "trap and trace device" in § 638.50 is silent in two important respects. First, the definition does not delineate on whose device or line the trap and trace device must be installed. Did the Legislature mean the device or property of the person being tracked, or the one doing the tracking, or both? Second, the definition does not specify the type of device on which the instrument must be installed. Did the Legislature intend to cover devices installed on a landline telephone, for example? A cellular telephone line? Computer devices? Website servers? Pagers? All the above?

The statutory definition of a trap and trace device cannot be correctly interpreted in isolation, as Plaintiff's allegations suggest here, by disregarding these two essential elements supplied by the Legislature elsewhere in the statutory regime. Yet that is exactly what Plaintiff is advocating here when he advances his extraordinarily broad interpretation of this criminal statute. Indeed, given the gaps in the Legislature's definition described above, the language of the trap and trace definition, read in isolation like Plaintiff does, criminalizes carrying a cell phone in California. How so?

The caller-identification function of a cell phone checks all the boxes of the words used to define a "trap and trace" device. Is caller identification a device or a process? Check. Does it capture incoming electronic impulses? It does capture incoming telephone calls. Again, check. Does it identify the originating number of the source of a wire communication? It identifies the telephone number of the person making the incoming call to the cell phone. Once more, check. The same can be said even of a cell phone's call log feature, which is also a process that records incoming wire communications and identifies the source (the telephone number) of that communication. So the plain words used to define a trap and trace device effectively outlaw the use of cell phones with caller ID if they are not read *in*

*pari materia* with the rest of the statutes. And this is precisely the "absurd result[]," that the Court avoids when interpreting what the Legislature meant by the words "trap and trace device." *Bitner v. Dep't of Corr. & Rehab.*, 87 Cal. App. 5th 1048, 1062 (Cal. Ct. App. 2023).

That said, this Court does not correctly consider the Legislature's definition of a trap and trace device in isolation to give it the implausibly broad meaning Plaintiff wants, an interpretation that would make most every adult — and the huge swath of children who also carry cell phones — criminals in California. California's rules of statutory construction instead guide courts to consider other "provisions relating to the same subject matter [and] harmonize[] [them] to the extent possible." *Cervantes*, *supra*, 225 Cal. App. 4th at 1014; *see also Upland Police Officers Assn. v. City of Upland*, 111 Cal. App. 4th 1294, 1304 (Cal. Ct. App. 2003) ("[W]e do not construe statutes in isolation, but rather read every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.")

These principles require the Court to also consider § 638.52, which sets forth the requirements for obtaining a court order to use a trap and trace device. Any order like this *must*:

1. Be made pursuant to an application by a peace officer, which describes how the information to be obtained from the trap and trace device relates to an ongoing criminal investigation;
2. Identify the subscriber of the "telephone line to which the … trap and trace device is to be attached;"
3. Identify "the person who is subject of the criminal investigation;" and
4. Identify the "number," and "physical location of the telephone line to which the … trap and trace device is to be attached."

Cal. Penal § 638.52(a) & (d).

When Penal Code sections 638.50, 638.51, and 638.52 are read together and harmonized, it is clear that when the Legislature used the words "trap and trace device," it meant a device attached to a tracked party's *telephone line* (not a website), which tracks incoming or outgoing *telephone calls* to that specific telephone line (not website browsing activity), as part of a criminal investigation (not for general commercial marketing purposes).

Even more problems arise from the interpretation advanced by Plaintiff here. Applying California Penal Code section 638.51 in the way suggested by Plaintiff would effectively render section 638.52's requirements mere surplusage. *People v. Valencia*, 3 Cal. 5th 347, 357 (Cal. 2017) ("[A] construction making some words [of a statute] surplusage is to be avoided." (cleaned up); *see also Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, 133 Cal. App. 4th 26, 29–30 (Cal. Ct. App. 2005).

This raises the question of why California's Legislature would engage in the idle act of enacting the statutory requirements in section 638.52 if a trap and trace device were something other than a device attached to a tracked person's telephone line. If the Legislature intended to obligate a website owner to obtain a court order to install a certain type of software on its own website, then the statutory requirement of having the court order spell out the details about the *telephone line* on which the trap and trace device is to be installed becomes meaningless. Cal. Penal § 638.52(d). Not only is this not the law, but it is also irrational.

To sum up, when the plain language of Penal Code sections 638.50 to 638.52 is contextually read *in pari materia*, harmonized, and correctly construed *strictly* as a criminal statute must be, then there is but one reasonable interpretation of the words "trap and trace device." This device: (1) is installed on the *telephone line*; (2) of a person who is being tracked; and (3) which tracks the telephone numbers of inbound calls to that telephone line. Any alternative interpretation — like the one suggested by Plaintiff's claims here — would effectively outlaw the use of caller

identification — functionality introduced by AT&T over 45 years ago and which the FCC mandated telephone providers offer on their networks nearly 40 years ago[3] — and is irreconcilable with the fundamental rules of statutory construction and interpretation discussed above.

That means this Court's inquiry may conclude at the first step of the statutory interpretation process. To the extent any doubts remain about what the Legislature intended, the legislative history of Penal Code § 638.51 also clarifies that there was never a legislative intent to regulate a website operator's installation of software on its own website.

### B. The Court May Properly Consider the Legislative History of Penal Code § 638.51, Which Also Shows the Legislature Solely Intended to Regulate Devices which Log the Telephone Numbers of Incoming Calls to a Tracked Party's Telephone Line

#### 1. California's Rules of Statutory Construction Authorize The Court to Consider The Legislative History of Penal Code § 638.51

Courts consider a statute's legislative history "[w]hen the wording of the statute is ambiguous or permits more than one reasonable interpretation." *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 453 (N.D. Cal. 2017) (citing *Alejo v. Torlakson*, 212 Cal. App. 4th 768, 787 (Cal. Ct. App. 2013); *accord*, *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, *supra*, 133 Cal. App. 4th at 29–30.

"[W]hile ambiguity is generally thought to be a condition precedent to interpretation, this is not always the case. The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole." *Times Mirror Co. v. Superior Ct.*, 53 Cal. 3d 1325, 1335

[3] *See*, *e.g.*, Prescott-Martini, *The History and Evolution of Caller ID* (Jan. 24, 2023), https://www.prescott-martini.com/the-history-and-evolution-of-caller-id.

(Cal. 1991). The Court may properly consider the legislative history of Penal Code § 638.51 for exactly these reasons.

*First*, let us assume for sake of argument that Plaintiff's broad and sweeping interpretation of a "trap and trace device" were reasonable. If that were the case, then the statute would be, at best, susceptible to two interpretations. But Plaintiff's interpretation — a reading of "trap and trace device" in isolation from the rest of the statutory regime — is inconsistent with the fundamental rules of statutory construction. Contrast that with the interpretation identified by Gen here, supported by reading Penal Code §§ 638.50–638.52 together and harmonizing them.

*Second*, as demonstrated above, the Legislature's definition of a "trap and trace device" is imprecise and ambiguous without a reading of the rest of the identified provisions in Chapter 1.5 of Title 15 of Part 1 of California's Penal Code at its sections 638.50 to 638.55. Acknowledging this, "statutory language, even if it appears to have a clear and plain meaning when considered in isolation, may nonetheless be rendered ambiguous when the language is read in light of the statute as a whole or in light of the overall legislative scheme." *People v. Valencia*, 3 Cal. 5th 347, 360 (Cal. 2017). And if this ambiguity exists, then the rule of lenity applies in this context, and the Court must interpret this "ambiguous criminal statute in the defendant's favor." *People v. Mutter*, 1 Cal. App. 5th 429, 436 (Cal. Ct. App. 2016).

*Third*, if there are any lingering doubts, then it is appropriate for the Court to resort to the legislative history of Penal Code § 638.51 to avoid absurd results which, if Plaintiff's interpretation were accepted, makes every person with a cell phone with the ubiquitous functionality of Caller ID guilty of a misdemeanor and exposed to extensive statutory damages. Given that over a decade ago, 92% of Californians reported having a cell phone, then California's Legislature would have cast an unfathomable dragnet over its citizens.[4] That simply cannot be the intent of

[4] Public Policy Institute of California, *Big Gains in Californians' Use of Cell*

this enactment. Nor can the absurd consequences of Plaintiff's interpretation be justified.

2. The Legislative History of Penal Code § 638.51 Demonstrates That the Legislature Only Intended to Regulate Devices Installed on Telephone Lines that Collect Telephone Number Information

The restrictions on trap and trace devices under Penal Code § 638.51 were passed by California's Legislature in 2016 through State Assembly Bill ("A.B.") 929. The purpose of the bill was summarized:

> As technology advances, criminals are becoming more and more sophisticated in their use of technology to commit crimes and avoid law enforcement. As a result, law enforcement officials have a variety of electronic tools to counter this and help them apprehend criminals in this age of rapidly changing technology.
>
> One of the tools available to law enforcement is called a "pen register" which allows law enforcement officers to record all outgoing numbers from a particular telephone line. In addition, another tool law enforcement uses is called a "trap and trace device" which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers. Both pen registers and trap and trace devices do not record audio or text messages and cannot be used to obtain real-time location data on a cellular telephone. But these tools are extremely useful for law enforcement in situations such as gang and narcotic investigations.
>
> AB 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations. The bill will require law enforcement officers to obtain a court order before using such devices by providing a judge with information that the use of information is relevant to an ongoing criminal investigation, and that there is probable cause to believe that the pen register or trap and trace device will lead to obtaining evidence of a crime.

Bill Analysis, A.B. 929 (2015) at p. S (RJN, Ex. 2) ("A.B. 929 Analysis").

There are two important observations to be drawn here. First, the California Legislature understood that a trap and trace device is a device that "record[s] what numbers have called *a specific telephone line*." *Id*. (emphasis added). Second, the

---

*Phones, Tablets to Go Online* (June 26, 2013), https://www.ppic.org/press-release/big-gains-in-californians-use-of-cell-phones-tablets-to-go-online/.

Legislature's purpose in enacting the statute was to "authorize state and local *law enforcement officers* to use …trap and trace devices." *Id*. Accordingly, the intent of the Legislature was not to *restrict* the ability of common citizens to install software *on their own devices* which let them identify who is accessing or calling their device. Instead, it was to create specific standards, consistent with the Fourth Amendment, authorizing law enforcement to obtain a court order to install a device *on the telephone line of a person being tracked* as part of a criminal investigation. *See* Penal Code § 638.55.

The Legislature mentioned nothing about regulating the use of tracking software installed by website operators on their own websites. Neither the internet nor websites were mentioned anywhere in the legislative history of the statute. A.B. 929 passed in 2015, at a time when this technology existed, but that technology was nowhere on the Legislature's radar when Penal Code §§ 638.50–638.52 was enacted in 2016. If the Legislature actually intended to enact legislation restricting a website operator's installation of tracking software *on their own website* (rather than someone else's device), then it would make sense that there would have been some mention, contemplation, or discussion of this technology in the legislative history.

Finally, the legislative history reflects repeated expression of the Legislature's understanding that a "trap and trace device" is a device installed *on a telephone line* which "records the originating telephone numbers of the calls dialed into a particular telephone line." A.B. 929 Analysis, p. S, at RJN, Ex. 2. The Legislature amplified its understanding:

> Pen registers and track and trace devices generally track incoming and outgoing telephone calls. They are often utilized by law enforcement to track which people in an investigation are communicating with one another and at what times. Unlike a wiretap authorization, pen registers and track and trace devices do not provide law enforcement with the content of the messages which are transmitted.

/ / /

A.B. 929 Analysis, pp. T–U. Elsewhere in the legislative history, the Legislature again expressed its understanding that "a 'trap and trace device' records the originating telephone numbers of the calls dialed into a particular telephone line." *Id*. at p. V.

All that to say, Penal Code sections 638.51's legislative history bolsters Gen's interpretation of the statute and what the Legislature meant by the words "trap and trace device." It also explains why the Legislature required a court order allowing use of a trap and trace device to spell out the details of the *telephone line* on which the device would be installed. Penal Code § 638.52(d). When considering the plain language of Penal Code § 638.50–638.52, read together in context, and with the legislative history, a trap and trace device is a device which (1) is installed on the telephone line; (2) of a person being tracked; (3) which tracks the telephone numbers of incoming calls to that telephone line.

The pixel tracking software Plaintiff alleges that Gen used on its own website is not within the trap and trace device universe that the Legislature occupies in the passage of A.B. 929. Plaintiff did not allege the software was installed on a telephone line. Nor does Plaintiff allege the software was installed on his device. And Plaintiff did not allege that Gen tracked telephone numbers from inbound calls to Plaintiff's telephone line. In short, Plaintiff has no cognizable claim against Gen under Penal Code § 638.50–638.52.

### C. Although One District Court Found a Trap and Trace Device to Encompass Website Software, the Ruling Is Neither Controlling Nor Persuasive

In *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024), the court considered whether tracking software allegedly installed by a website operator on their own website servers were a "trap and trace device." The court found that the software "may qualify" as such a device, "at least at the motion to dismiss stage." *Id*. at *3. But nothing in its ruling

suggests that the parties gave the district court the benefit of the legislative history. Nor was that interpretation moored to California's rules of statutory construction. So it is unpersuasive.

## VII. CONCLUSION

For all these reasons, Defendant Gen Digital respectfully asks the Court to grant its motion to dismiss under Rule 12(b)(2) for lack of jurisdiction, or under Rule 12(b)(6) for failure to state a claim.

DATED: December 20, 2024

BUCHALTER
A Professional Corporation

By: /s/Artin Betpera
ARTIN BETPERA

Attorneys for Defendant
Gen Digital Inc.

Word Count Certification

The undersigned, counsel of record for Defendant Gen Digital Inc., certifies that this brief contains 6,907 words, which complies with the word limit of L.R. 11-6.1.

/s/Artin Betpera
ARTIN BETPERA