Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Robert Conohan*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ROBERT CONOHAN, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

GEN DIGITAL, INC., an Arizona corporation; and DOES 1 through 25, inclusive,

Defendants.

Case No.: 2:24-cv-06894-MCS-PVC

**PLAINTIFF ROBERT CONOHAN'S OPPOSITION TO DEFENDANT GEN DIGITAL, INC.'S MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing
Date: February 3, 2025
Time: 9:00 am
Courtroom: 7C

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. RELEVANT FACTUAL BACKGROUND .......... 1

III. LEGAL STANDARD .......... 2

IV. ARGUMENT .......... 3

A. The Court Has Specific Personal Jurisdiction Over Defendant .......... 3

1. The commission of a tortious act in California alone provides sufficient minimum contacts to support the exercise of personal jurisdiction .......... 3

2. Plaintiff's Claim "Arises from or Relates to" Defendant's Forum-Related Activities because Defendant injured Plaintiff in California .......... 6

a. Many courts apply the "but for" test" .......... 6

b. The Court should follow *Rodriguez v. Aquatic Sales Solutions* and *Fudge v. Delta Air Lines, Inc.* .......... 7

3. Purposeful Direction .......... 7

a. Intentional Act .......... 8

b. Express Aiming .......... 9

c. Knowledge .......... 10

4. Exercising Personal Jurisdiction Would Be Reasonable .......... 10

B. Plaintiff State a Plausible Claim against Defendant for Violation of the California Invasion of Privacy Act, Penal Code § 638.51 .......... 13

1. Plaintiff Properly Pleads Use of a Trap and Trace Device Under the Plain Meaning of the Statute ........ 13

2. The Trap and Trace Law Applies to Websites ........ 14

3. Many Federal District Court and California Superior Court Have Reached the Same Conclusion ........ 16

V. CONCLUSION ........ 18

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ........ 19

CERTIFICATE OF SERVICE ........ 20

# TABLE OF AUTHORITIES

Cases

*Abbott Power Corp. v. Overhead Electric Co.*, 60 Cal. App. 3d 272 (1976) ...................... 5

*Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 (July 31, 2024) ...................... 14, 15, 17

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ...................... 6

*Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257 (9th Cir. 1989) ...................... 9

*Calder v. Jones*, 465 U.S. 783 (1985) ...................... 8

*Chien v. Bumble Inc.*, 641 F. Supp. 3d 913 (S.D. Cal. 2022) ...................... 4

*Climax Portble Mach. Tools, Inc. v. Trawema GmbH*, No. 3:18-CV-1825-AC, 2020 WL 1304487 (D. Or. Mar. 19, 2020) ...................... 4

*Core-Vent v. Nobel Indus AB*, 11 F.3d 11 F.3d 1482 (9th Cir. 1993) ...................... 11

*DocuSign, Inc. v. Clark, No. 21-CV-04785-WHO, 2022 WL 2136071 (N.D. Cal. June 14, 2022)* ...................... 3

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ...................... 8

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597 (9th Cir. 2018) ...................... 3, 7, 10

*Fudge v. Delta Air Lines, Inc.*, No. 2:24-CV-04531 HDV SSC, 2024 WL 4445985 (C.D. Cal. Oct. 4, 2024) ...................... 7

*Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024) ...................... 17

*Herbal Brands, Inc. v. Photoplaza, Inc*. 72 F.4th 1085 (9th Cir. 2023) ...................... 6, 9

*Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020)............................................... 14

*Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 (September 17, 2024)............... 17

*Maggos v. Helm*, 185 F.3d 868, 1999 WL 402448 (9th Cir. 1999) ................................ 11

*Magnecomp Corp. v. Athene Co*., 209 Cal. App. 3d 526 (2009) ...................................... 5

*See Matera v. Google Inc., No. 15-cv-04062, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016)* ................................................................................................................. 18

*Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ......................................................................... 17

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985)............................................................................................................ 3

*Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024)... 17

*Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002) ...................... 6

*Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797 (2004) .......................... 6, 9, 10

*Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ......................................................................................................... 17

*Sturgeon v. Frost, 587 U.S. 28, 59 (2019)* .................................................................... 18

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ............................. 4, 9

*Terracom v. Valley Nat. Bank*, 49 F.3d 555 (9th Cir. 1995)...................................... 11, 12

*TikTok Inc. v. Garland, 122 F.4th 930, 939 (D.C. Cir. 2024)* ........................................ 13

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020) ............... 3

<u>Statutes</u>

Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. No. 118-50, div. H ........ 13

Cal. Penal Code § 629.51(a)(2) ........ 15

Cal. Penal Code § 630 ........ 11

Cal. Penal Code § 638.50(c) ........ 13

Cal. Pen. Code, § 638.51(a) ........ 13, 14, 16

<u>Other Authorities</u>

Rest.2d Conf. of Laws, § 36, p. 147 ........ 5

*A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 36 (2012)* …18

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant seeks dismissal because (1) it would be unfair and unreasonable to hold it accountable in California for violating California law and invading the privacy rights of countless people within California that ran the code Defendant installed on its website; and (2) because the California legislature couldn't have meant to apply the "Trap and Trace Law," California Penal Code § 638.5, to the internet when it defined the scope of "electronic communications." How is Defendant so sure? Because one of the analyses of the bill in the legislative history reference telephone communications, and the legislature couldn't have meant the ban on Trap and Trace devices to apply to the internet because the exception allowing law enforcement to obtain a warrant allowing such devices does not allow entities like LAPD to run massive social media websites that collect data about millions of Californians.

## II. RELEVANT FACTUAL BACKGROUND

Defendant Gen Digital, Inc., operates a website that "sells antivirus, malware, ransomware, and hacking protection services." FAC ¶ 8. On that website Defendant installed code written and controlled by TikTok, a California company, that violates California law and invades the privacy of every person that visits its website, including Plaintiff Robert Conohan. *Id.* ¶¶ 9, 14-15. This was because the code acted as an illegal "Trap and Trace" device, in violation of California Penal Code section 638.51. Defendant's purpose in violating the privacy rights of Plaintiff and countless others was

because data is valuable, and data about specific individuals is more valuable than anonymous or aggregated data. *E.g.*, FAC ¶¶ 10, 13, 19. By operating an illegal trap and trace device Defendant could turn anonymous data in personalized data about specific individuals through de-anonymizing the data or "fingerprinting." *Id.* ¶ 10. Fingerprinting can only happen because companies like TikTok have collected vast troves of personal data which it then uses build up enough of a profile on an individual so it can identify the source and origin of otherwise anonymous website visits and interactions. And in exchange for contributing to TikTok's massive database by installing its code Defendant gets to enjoy the benefits that come when an online retailer has removed visitors' privacy thereby turning the anonymous website visitor into the specifically identifiable recipient of highly personalized and universally unwanted marketing efforts. *E.g.*, FAC ¶¶ 17-19, 30-31. If people like Plaintiff actually wanted Defendant's marketing and advertising to be more aggressive, personalized, and tailored, companies like Defendant have a lot of options and make it very easy to do just that, from email-signups to expressly asking customers for their preferences or countless other options. Companies like Defendant choose to use an illegal Trap and Trace device because clearly many people do not want to give up their anonymity and privacy to every company whose website they visit, that is why the TikTok Software was designed to meet this sole objective. FAC ¶ 18.

## III. ARGUMENT

### A. <u>The Court Has Specific Personal Jurisdiction Over Defendant</u>

**1. <u>The commission of a tortious act in California alone provides sufficient minimum contacts to support the exercise of personal jurisdiction.</u>**

As an initial matter Defendant applies the wrong test for personal jurisdiction. Plaintiff alleges Defendant tortiously misappropriated Plaintiff's data within California using TikTok Software, which *alone* satisfies the minimum contacts requirement. *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985) ("The commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test]."); *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 673 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021) ("By sending the malicious code, defendants electronically entered the forum state seeking out plaintiffs' servers, which were a necessary component to transmit the malicious code to the users."). This is based on the "well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) (citations omitted) ("*Freestream*"). This means that "*Paccar*, not *Calder*, is the proper starting place." *Freestream*, 905 F.3d at 606. "In other words, the purposeful direction standard would be satisfied." *DocuSign, Inc. v. Clark*, No. 21-CV-04785-WHO, 2022 WL 2136071, at *4 (N.D. Cal. June 14, 2022).

It is implausible to conclude that the wrongdoing alleged was committed anywhere besides California, and indeed Defendant does not and cannot suggest it occurred in any

alternative location. Plaintiff was located within California at all relevant times, and if that weren't enough, TikTok itself is also located within California. FAC ¶ 4 (alleging Plaintiff "is, and at all times relevant to the allegations herein has been, a citizen of California located and residing within the Central District of California." There is no basis on a motion to dismiss, under this standard of review, or in Defendant's Motion, to conclude that the location where the alleged tort was committed, that is, where Plaintiff's privacy rights were violated, is anywhere besides California. Numerous courts have concluded that the wrongful conduct in the unauthorized collection of data with an improper intent at least partially takes place where that data is stored. *Climax Portable Mach. Tools, Inc. v. Trawema GmbH*, No. 3:18-CV-1825-AC, 2020 WL 1304487, at *4-*5 (D. Or. Mar. 19, 2020) ("courts also have found that acquisition of trade secrets from a server in the forum state with knowledge of its location, or other intentional and knowing improper use of a computer server in the forum state, creates enough minimum contacts to support personal jurisdiction"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 742 (N.D. Cal. 2023) (concluding minimum conducts were sufficiently alleged for a violation of CIPA based on the company's chatbox on its website); *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 929 (S.D. Cal. 2022) (minimum contacts established when defendant, among other things, "collected personal and location information for the purpose of sending targeted 'marketing information, promotions, and advertisements.").

"A state has a special interest in exercising jurisdiction over those who commit tortious acts within its territory. Therefore, it is reasonable that a state should exercise

jurisdiction over those who commit or cause to be committed in the state what is claimed to be a tortious act." *Magnecomp Corp. v. Athene Co*., 209 Cal. App. 3d 526 (2009); *Abbott Power Corp. v. Overhead Electric Co*., 60 Cal. App. 3d 272, 278-279 (1976) [California may properly exercise jurisdiction over an individual whose tortious conduct it seeks to deter]; *see also* Rest.2d Conf. of Laws, § 36, p. 147 ("A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act.").

But even if that alone were not enough, the Supreme Court's opinion in *Calder* provides ample basis for finding it reasonable to hold Defendant accountable in a California court. *Calder v. Jones*, 465 U.S. 783 (1985). In *Calder* a California plaintiff brought a suit for defamation against a writer and the editor of the National Enquirer, a national newspaper based in Florida, but with a circulation of approximately 600,000 in California. The allegedly libelous story concerned a California resident whose television career was centered in California. The writer lived in Florida and did not personally visit California but relied on phone calls to sources in California for information contained in the article. On these facts the Supreme Court concluded that jurisdiction over defendants was proper "based on the 'effects' of their Florida conduct in California." *Calder v. Jones*, 465 U.S. at 789. Defendants knew their article "would have a potentially devastating impact upon [plaintiff]. And they knew that the brunt of that injury would be felt by [her] in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Id*. at 789-790. Under the circumstances, the court found defendants must

reasonably expect to be "haled into court" in California to defend against plaintiff's tort claims. *Id*. at 790.

**2. <u>Plaintiff's Claim "Arises from or Relates to" Defendant's Forum-Related Activities because Defendant injured Plaintiff in California.</u>**

Plaintiff satisfies all three parts of the purposeful direction test for Defendant's tort. See *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (2004). Plaintiff begins with the second prong of the specific jurisdiction analysis before proceeding to the first and third prongs. "The second prong of the specific jurisdiction inquiry requires that a plaintiff's claim arise out of or relate to the defendant's contacts with the forum." *Herbal Brands, Inc. v. Photoplaza, Inc*. 72 F.4th 1085, 1096 (9th Cir. 2023).

**a. <u>Many courts apply the "but for" test</u>.**

In determining whether a claim "arises out of" the non-resident's forum-related activities, many courts apply a "but for" test. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Specifically, a claim "arises out of" the defendant's forum-related activities if the plaintiff would not have suffered loss "but for" those activities. *Id*. ("The question, therefore, is this: but for [Defendants'] contacts with . . . California, would [Plaintiff's] claims against [Defendant] have arisen?"). The Ninth Circuit relies on the "but for" test to determine if this second prong is satisfied. See *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). This test is satisfied if "[Plaintiff] would not have been injured but for [Defendant's] contacts in [the forum]." *Ballard*, 65 F.3d at 1500. And

but for Defendant sending the TikTok Software to Plaintiff while he was within California through its website Plaintiff would not have been injured.

**b. <u>The Court should follow *Rodriguez v. Aquatic Sales Solutions* and *Fudge v. Delta Air Lines, Inc.*</u>**

In *Rodriguez v. Aquatic Sales Solutions LLC*, 2:23-cv-05198-CAS-Ex (May 29, 2024), in denying Aquatic Sales' motion to dismiss for alleged lack of personal jurisdiction, the Court found that the defendant's conduct in operating a website that sold aquatic supplies, and its sale of physical goods to California residents through its website "related to" the plaintiff's California Invasion of Privacy Act claim. "The Website, and its accompanying chat feature, were accessible in California." *Id*.

Similarly, in *Fudge v. Delta Air Lines, Inc.*, No. 2:24-CV-04531 HDV SSC, 2024 WL 4445985, at *3 (C.D. Cal. Oct. 4, 2024) the court found there was personal jurisdiction over a similar CIPA claim. It explained that because the plaintiffs were using their devices in California, the allegation that the defendant "records and disseminates Plaintiffs' and Class Members' data, communications, and personal information in California" was sufficient to establish personal jurisdiction. *Id* ("In alleging these facts, Plaintiffs make a sufficient prima facie showing to meet the specific jurisdiction requirements for both of their claims").

**3. <u>Purposeful Direction</u>**

Where, as here, a case is based on an alleged tort, courts in the Ninth Circuit employ a purposeful direction analysis under the three-part *Calder* "effects" test. *Freestream*, 905

F.3d at 603-04 (citing *Calder*, 465 U.S. at 791). Under the *Calder* test, a plaintiff must allege a defendant: "(1) committed an intentional act[;] (2) expressly aimed at the forum state[;] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). “In the context of tort claims, the Supreme Court has held that the purposeful direction requirement is met where the defendants intended to and did indeed cause injury within the forum state, even though the actions that gave rise to the effects took place outside the forum.” *Calder*, 465 U.S. at 783 . This is easily established here where the code Defendant inserted into its website that was sent into California and caused Plaintiff’s computer to send out code. *See Fudge*, 2024 WL 4445985, at *3. At a conceptual level Defendant’s website is no different than if Defendant had placed a phone call into California to achieve the same result. The fact that Defendant automated the process through computer code to do it potentially millions of times does not change the fact that on each occasion Defendant was essentially placing the illegal code into California with a phone call each time.

**a. <u>Intentional Act</u>**

Here, Plaintiff alleges that Defendant operates the Website and sells headphones for videogaming, snowboarding, and skateboarding, including to California residents. FAC ¶¶ 1, 11, 23. Defendant installed TikTok Software on its Website created by TikTok in order to identify website visitors. FAC ¶¶ 12–16. These qualify as intentional acts. Defendant therefore committed an intentional act by embedding TikTok Software on the Website for

the purpose of de-anonymizing visitors to obtain their identity for marketing and economic purposes.

**b. Express Aiming**

"The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. Where a tort is "intentional," the Ninth Circuit has "found jurisdiction in the plaintiff's home forum," even though the directions of the intentional act and the known impact diverged, because "in such cases the 'acts are performed for the very purpose of having their consequences felt in the forum state." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989).

For example, in *Herbal Brands*, 72 F.4th at 1092-94, the Ninth Circuit held that a defendant "expressly aimed" its conduct at a forum if, "in its regular course of business, [it] sells a physical product via an interactive website and causes that product to be delivered to the forum." Similarly in, *Swarts*, 2023 WL 5615453, the court held that Home Depot had purposefully directed its conduct at the forum by "selling a physical product to [plaintiff] via its interactive website." *Id.* Here Defendant purposefully directed its activities toward the Central District by selling "antivirus, malware, ransomware, and hacking protection services" through its Website to California residents that also ran the TikTok Software. FAC ¶ 5.

**c. Knowledge**

With regards to the third element, defendant caused harm that it knew would be suffered in California – that is – the taking of Plaintiff's data. Here, Defendant was aware that it was using software to identify anonymous visitors to the Website. Thus, the Court should find that Defendant purposefully directed its conduct toward California in engaging in tortious conduct.

### 4. <u>Exercising Personal Jurisdiction Would Be Reasonable</u>

It is well settled that if the first two prongs are satisfied, then the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit has identified seven factors relevant to this inquiry. *Freestream*, 905 F.3d at 607 (listing factors). In other words, the defendant must show that exercising jurisdiction would be unreasonable. *Id*.

Taking all allegations in the complaint as true, the seven factors weigh in favor of asserting jurisdiction here based on the seven factor test: (1) The extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See also*, *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995). None of the factors is dispositive itself; therefore the Court must balance all seven. *Id*.

The seven factor test weighs heavily in Plaintiff's favor. Even on the merits, there is no greater burden for Defendant to defend this action in California compared to anywhere else that the Website reaches. California has expressly declared a very strong interest in protecting its citizens from illegal surveillance, *see* Cal. Penal Code § 630, and no other state involved has any meaningful interest in providing a forum and jury for enforcing California's privacy laws.

More specifically as to each factor, Defendant did not particularly seek out a California buyer, but nonetheless marketed its products on the Website where California customers could purchase them and sent code to Plaintiff's device in California. Defendant did so intentionally and knowingly, and thereby "purposefully interjected" itself into affairs with California. *See Core-Vent v. Nobel Indus AB*, 11 F.3d 11 F.3d 1482, 1488 (9th Cir. 1993). Additionally, Defendant committed an intentionally tortious act directed at California by taking Plaintiff's private data in California. *See Maggos v. Helm*, 185 F.3d 868, 1999 WL 402448 (9th Cir. 1999) (unpublished). The Ninth Circuit concluded there was personal jurisdiction because the defendants' actions were directed, via telephone and correspondence, at plaintiff's Hawaiian counsel. In addition, the plaintiff alleged defendants knew plaintiff would suffer harm in Hawaii, and Hawaii had an overriding interest in providing redress for those of its citizens who had been tortiously injured. Accordingly, the first prong weighs strongly in Plaintiff's favor.

Assuming Defendant is an Arizona corporation, California is not too inconvenient for it to defend itself here. There is minimal conflict with Arizona's sovereignty, so the

third factor weighs in Plaintiff's favor. California has a greater interest than Arizona in adjudicating the suit because it is obligated to protect its citizens from harmful acts of non-resident defendants, so the fourth factor weighs in Plaintiff's favor.

The fifth factor considers where the bulk of the evidence and witnesses are located. This factor is neutral and favors neither party because the bulk of the proffered evidence is available on the internet and can be accessed in California or anywhere else.

The sixth factor addresses the importance of California as a forum for convenient and effective relief for Plaintiff. *Terracom*, 49 F.3d at 561. Since Plaintiff's home is in California, California is clearly a more convenient forum for Plaintiff. The seventh factor weighs in Defendant's favor, because Arizona is another proper forum where Plaintiff may bring its claim, though inconvenient to Plaintiff.

Therefore, Defendant cannot satisfy its burden of showing that the third prong of the specific jurisdiction test is not met because Defendant cannot establish that the exercise of personal jurisdiction would be unreasonable.

Because the exercise of personal jurisdiction over Defendant would be reasonable the Court must deny the Motion.[1] The alternative would mean that it would be unfair for even the State of California to bring a civil case against Defendant for violating the privacy

---

[1] If the Court disagrees, Plaintiff requests the right to amend and permission to conduct jurisdictional discovery into the topics the Court found insufficient. Facts related to the contracts between Defendant and TikTok, the data Defendant received about Californians including Plaintiff, locations of relevant servers where data was sent and received, and the scope of Defendant's wrongdoing for Californians could all help further establish the nexus between Defendant's conduct and California.

of potentially millions of Californians in collaboration with a social media platform whose behavior and affiliations have been so concerning that it motivated Congress to pass a law about it TikTok specifically. Protecting Americans from Foreign Adversary Controlled Applications Act into law. Pub. L. No. 118-50, div. H; *see generally TikTok Inc. v. Garland*, 122 F.4th 930, 939 (D.C. Cir. 2024) (subsequent history omitted). The Supreme Court will decide whether that was within Congress's powers, but there can't be any meaningful debate it would be unfair or unreasonable for Congress or the States to hold such actors to account in the jurisdictions where they have engaged in the wrongful behavior and instead constitutional principles of fair play must depend solely on the vagaries such as cloud server locations and electronic packet transfer protocols.

### B. Plaintiff States a Plausible Claim against Defendant for Violation of the California Invasion of Privacy Act, Penal Code § 638.51

#### 1. Plaintiff Properly Pleads Use of a Trap and Trace Device Under the Plain Meaning of the Statute.

Plaintiff asserts that Defendant violated California's Trap and Trace Law. California Penal Code § 638.51 provides, in pertinent part, as follows:

> (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.
> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
> (1) To operate, maintain, and test a wire or electronic communication service.
>
> * * *

(5) If the consent of the user of that service has been obtained.

Thus, to state a claim under § 638.51, a plaintiff must allege that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. *Id*. § 638.51.

California law defines a "trap and trace device" as:

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

Cal. Penal Code § 638.50(c).

"Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute)." *Lungren v. Deukmejian*, 45 Cal. 3d 727, 735 (1988) (citations omitted); *see also Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) ("If the language is clear, courts must generally follow its plain meaning . . .").

Penal Code § 638.51 is not ambiguous. On its face, the FAC alleges the two elements necessary to establish a violation of Penal Code § 638.51: (i) Defendant installed a prohibited device (pen register or trap and trace); (ii) without a court order. *E.g.*, *Greenley v. Kochava, Inc.* (S.D. Cal. July 2023) 684 F. Supp. 3d 1024, 1050-51. Nor is there any ambiguity in the definition of a trap and trace device in Penal Code § 638.50(c). Defendant argues the statute is ambiguous because "the definition does not delineate on whose device or line the trap and trace device must be installed." Mot. at 21. But this is irrelevant to

Plaintiff's claim because Defendant was prohibited from using OR installing a trap and trace device, and the statutory definition of a trap and trace device requires neither a "line" nor ownership of the device. Penal Code § 638.51.

Defendant also goes on an odd tangent regarding caller ID services, apparently in order to try to show the Trap and Trace Law is absurd unless the warrant requirements are also applied to the definitions. Mot. at 21-24. But Defendant's argument relies on a myriad of facts absent from the complaint which can only be addressed on summary judgment, Fed. R. Civ. P. 12(d), and fails to show any actual absurdity, because there would be nothing absurd about a law banning caller ID services, merely surprising. And Defendant made no attempt to even begin the complex task of analyzing any of the numerous other regulations and statutes at both the state and federal level involved in caller ID systems, let alone cellular technology. *E.g.*, *People of State of Cal. v. F.C.C.*, 75 F.3d 1350, 1358 (9th Cir. 1996) (upholding FCC's order preempting California Public Utility Commission's rules for caller ID services).

**2. <u>The Trap and Trace Law Applies to Websites.</u>**

Defendant's basic argument is that § 638.51 only applies to physical devices attached to telephone lines, not website software. This is wrong for many reasons.

Most significantly, the applicable definition for an "electronic communication" is found in Penal Code § 629.51(a)(2) and includes "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." As explained in *Shah v. Fandom,*

*Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024), it is impossible to reconcile this part of the definition with Defendant's argument that trap and trace devices are limited to devices attached to phone lines. The fact that Defendant never even cites to this section in its Motion, much less tries to reconcile it with its arguments and "evidence" regarding the legislative are quite telling. Moreover, "Nowhere in [materials from the June 2015 Senate Amendments to CIPA] did the Legislature state an intent to add a statutory requirement limiting pen registers to those traditional forms." *Id.* at *4 n. 2. Indeed, as *Shah* explains, CIPA is to be interpreted broadly to protect the privacy interests of Californians and is not limited to the technologies available at the time the law was enacted.

As the courts in both *Moody v. C2 Educational Systems Incorporated*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024), and *Anne Heiting v. Taylor Fresh Foods, Inc*., LASC Case No. 24STCV12891 (July 31, 2024), explained regarding attempts to use federal law to make this same argument. In *C2 Educational Systems, Inc.*, the Court stated:

> Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to "wire or electronic communication." Cal. Penal Code §§ 638.50(b)–(c). To be sure, Defendant cites a different district court case, *Application of U.S.A. for an Order Authorizing Use of Cellular Telephone Digital Analyze*r, in which a court found that a similar federal statute was limited to physical devices attached to a telephone line. 885 F. Supp. 197, 200 (C.D. Cal. 1995). However, this case concerned federal law, not California law. Though interpretations of similar federal laws are certainly persuasive in interpreting California law, they are not binding. See, e.g., *Bell v. Farmers Ins. Exch*., 87 Cal. App. 4th 805, 817 (2001) ("California courts have recognized that . . . authorities construing

> [similar] federal statutes provide persuasive guidance to state courts.") (collecting cases). Thus, this case, though persuasive, does not foreclose the possibility that software may qualify as a pen register or trap and trace device under California law, at least at the motion to dismiss stage."

Similarly, in *Taylor Fresh Foods*, in overruling Defendant's demurrer to the Complaint asserting a cause of action for violation of CIPA, Penal Code Section 638.51, the Court stated:

> [N]either CIPA nor the modern version of the federal statutes cited in *Digital Analyzer* limit the definition of 'pen register' or 'trap and trace device' to physical devices attached to telephone lines. Instead, these provisions currently define pen register and trap and trace as a 'device or process' without referencing physical attachment to anything. (See Pen. Code, § 638.50; 18 U.S.C. § 3127.) And as pertinent here, a trap and trace device is broadly defined as a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication." (Pen. *Code, § 638.50(c).)*

CIPA defines "electronic communication" broadly as "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." Cal. Penal Code § 629.51(a)(2). As the Court in *Taylor Fresh Foods* noted, "[a] process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Id*.

In *Taylor Fresh Foods*, the Court also factually distinguished *Digital Analyzer,* which concerned an application by law enforcement to use a pen register or trap and trace

device under federal law. The Court stated that *Greenley v. Konchava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), discussed *infra,* was more on point "because it concerns the precise statutory provision at issue here, Penal Code § 638.51. Furthermore, like this case, *Greenley* concerns the sufficiency of a civil complaint seeking recovery for illegal usage of a pen register or trap and trace device.

Defendant's argument also logically makes no sense because limitations on an exception (here the limitation on the exception for trap and trace warrants to telephone lines) cannot limit the scope of the general rule prohibiting trap and trace devices. Consider the common law school hypothetical of an ordinance banning bringing "a vehicle into the park" that has an exception for police vehicles. "The debate usually centers on what counts as a 'vehicle.' Is a moped forbidden? How about a baby stroller?" *Sturgeon v. Frost*, 587 U.S. 28, 59 (2019) (Sotomayor, J., concurring); *see also* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 36 (2012). Defendant's entire argument is that it can't apply to baby strollers or surfboards because the prohibition on vehicles can only be understood by reference to the types of vehicles the police are authorized to use. It's clear that police vehicles would be banned without this exception, just as it's also clear that an exception allowing police cars in the park does not help in determining whether strollers or surfboards are prohibited.

The California Legislature and courts have in fact both been quite clear on how CIPA should be interpreted – broadly. *See Matera v. Google Inc.*, No. 15-cv-04062, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (quoting *Flanagan v. Flanagan*, 27 Cal.4th

766 (2002)). At no point does Defendant identify any actual ambiguity, nor can it because its goal is to import limitations on the warrants that can be issued authorizing trap and trace devices into the general definition of such devices. But if the legislature had wanted to do that it would have simply included that language in the definition of a trap and trace device. The fact that it specifically limited law enforcement warrants for trap and trace devices to telephone lines is compelling evidence that the legislature specifically understood and intentionally choose not to limit the general definition of such devices. Perhaps because LAPD has no business running a massive social media platform that is affiliated with a foreign government and collects vast amounts of data on millions of Americans.

Thus, the Court should find that Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of sections 638.50 and 638.51. *See e.g.*, *Greenley,* 684 F. Supp. 3d 1024 (S.D. Cal. 2023).

**3. <u>Many Federal District Court and California Superior Court Have Reached the Same Conclusion</u>**

Defendant argues that *Moody* is simply wrong and should not be given any persuasive value because the opinion does not address legislative history and because the interpretation was not "moored" to California's rules for statutory construction. Mot. at 28-29. As explained above, both of those arguments are incorrect. The legislative history Defendant seeks to judicially notice is irrelevant (and the request should therefore be denied) because that history does not and cannot logically prove Defendant's point and

under California's rules of statutory construction identified above has no bearing on the interpretation of an unambiguous explicit statutory definition. *Moody* therefore had no need or reason to address irrelevant legislative history and in fact perfectly applied California's rules of statutory construction.

It bears noting that Judge Klausner's conclusion in *Moody* has been reached by many, many state and federal courts and Defendant has not identified a single contrary decision. In the Northern District Judge Breyer reached the same conclusion last December, *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024), as did Judge Lin last October, *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024). And Judge Bashant in the Southern District reached the same holding last year. *Greenley v. Kochava, Inc.* 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. July 2023).

Defendant must have also missed additional decisions by judges in the Los Angeles Superior Court all reaching the exact same conclusion – that the Trap and Trace Law applies to internet communications. *E.g.*, *Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 (July 31, 2024); *Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 (September 17, 2024); *Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024); *Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024). These are just a sample of the recent decisions by California judges rejecting Defendant's arguments. They have been included in Plaintiff's Request for Judicial Notice for the Court's convenience.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts and conduct jurisdictional discovery should the Court find the Complaint deficient.

DATED: January 3, 2025

**TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Robert Conohan

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Robert Conohan, certifies that this brief contains 5,393 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 3, 2025

**TAULER SMITH LLP**

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorneys for Plaintiff
Robert Conohan

## CERTIFICATE OF SERVICE

I hereby certified that I served the foregoing document on all parties of record by CM/ECF.

DATED: January 3, 2025

**TAULER SMITH LLP**

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorneys for Plaintiff
Robert Conohan