BUCHALTER
A Professional Corporation
ARTIN BETPERA (SBN: 244477)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant
Gen Digital, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

Robert Conohan,

Plaintiff,

vs.

Gen Digital, Inc.; and Does 1 through 25, inclusive,

Defendants.

Case No. 2:24-cv-06894-MCS-PVC

**DEFENDANT GEN DIGITAL, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**
**[Fed. R. Civ. P. 12(b)(2) & 12(b)(6)]**

Date: February 3, 2025
Time: 9:00 a.m.
Dept.: 7C

Judge: Mark C. Scarsi, U.S.D.J.

## I. INTRODUCTION

Plaintiff spends many pages trying to establish this Court's personal jurisdiction over Gen. He tries to address all factors and elements from a multitude of irrelevant analytical tests to satisfy this burden. He faults Gen for not identifying all subfactors from an indiscriminate conglomerate of tests. But Plaintiff missed the mark. The overarching test is *conjunctive*: if Plaintiff cannot establish the first element of the jurisdictional test — "purposeful direction" — then the analysis ends, there is no jurisdiction, and the Rule 12(b)(2) motion is granted. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

On this first element, Plaintiff claims that Gen's actions as alleged were purposefully directed in California because Gen "sent code" into the state. Opp. Citation to any allegations in the operative pleading? None. The how, what, where, when, and why of this unpled "sent code" allegation is likewise nonexistent. Plaintiff next argues that Gen's sale of services in California establishes purposeful direction. *Id. at 9*:16-19. But this too is unpled. Even if it were alleged, Gen's sales in this context — without more — cannot satisfy the purposeful direction element. Why? None of Plaintiff's claims "arise" from those sales. If they were pled, and correctly taken as true at the pleadings stage, then they would arise from the computer "code" that Gen allegedly installed on its website. But Plaintiff offers no basis for concluding that Gen's use of this "code" happened anywhere but its principal place of business in Arizona.

Next, Plaintiff urges the Court to adopt his own, overly broad interpretation of a "trap and trace device." He says such a device would encompass software that a person installs or uses on their own device which identifies the source of incoming telephonic or electronic communications. This too does not work because his overly broad interpretation would criminalize the use not just of Caller ID (Plaintiff derides this example), but many other types of ubiquitous technology like Outlook, Gmail, and Siri.

Plaintiff leaves unaddressed the fatuous results that would flow from his broad interpretation. Nor does he reconcile his interpretation with the strict construction requirement attendant to criminal statutes like Cal. Penal Code § 638.51. His opposition is untethered to the fundamental rules of statutory construction, and his overly broad interpretation of a "trap and trace device" cannot be correctly adopted.

## II. DISCUSSION

### A. Plaintiff Has Failed to Meet His Burden of Establishing That This Court May Exercise Specific Personal Jurisdiction Over Gen

As analyzed in Gen's motion, the Ninth Circuit has developed a conjunctive, three-part test for determining whether a court may exercise specific jurisdiction over a nonresident defendant. Part One asks whether a defendant "purposefully directed his activities toward the forum." *Axiom Foods*, *supra*, 874 F.3d at 1068. Part Two asks whether Plaintiff's claim "arises out of or relates to the defendant's forum-related activity." *Id*. And Part Three asks whether exercising jurisdiction "comport[s] with fair play and substantial justice." *Id*. Since he cannot get past Part One, Plaintiff chiefly focuses on Parts Two and Three. Yet because the test is conjunctive, his failure to establish Part One — "purposeful direction" — by well-pled allegations, obviates any need to even examine Parts Two or Three.

1. <u>The Effects Test Supplies The Appropriate Standard For Whether the Court Exercises Personal Jurisdiction Over Gen</u>

Plaintiff argues that Gen has applied the "wrong test for personal jurisdiction" because, he says in his opposition, Gen "misappropriated Plaintiff's data within California." Opp. 3:4-6. Plaintiff's meritless argument strays from his own allegations.

Two standards apply when determining whether an out-of-state defendant has "purposefully directed" its activities towards the forum. If a defendant's injury-causing conduct occurs *within the forum state*, then that act suffices for purposeful direction. *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp*., 905 F.3d 597, 603 (9th Cir. 2018) (citing *Paccar Int'l, Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058, 1064 (9th Cir. 1985)) (cleaned up). If a defendant's conduct occurs *outside* the forum state, then courts apply the "effects test of *Calder v. Jones*, 465 U.S. 783." *Id*. at 603 (explaining that "the [*Calder*] inquiry focuses on conduct that takes place *outside* the forum state and that has effects inside the forum state.")

Plaintiff says *Paccar* applies because his privacy rights were violated in California. Opp. 4:4-7. But he conflates his alleged injury with the alleged conduct of Gen which caused the injury. The jurisdictional inquiry focuses on the latter. For

*Paccar* to apply, Plaintiff must show Gen took some action *within* California causing Plaintiff's alleged injury. Here, *Paccar* is inapplicable because Plaintiff's FAC is devoid of any such allegations. Plaintiff instead alleges his injury was caused by Gen's installation of tracking software on its own website. FAC, ¶¶ 9–14, 24(a), 31. His FAC contains no allegations establishing that Gen operates its website in California, or anywhere else besides its principal place outside California in Arizona. The *Calder* effects test therefore applies.

No cases cited by Plaintiff support the application of *Paccar*. For example, *Climax Portable Mach. Tools, Inc. v. Trawema*, No. 3:18-CV-1825-AC, 2020 WL 1304487 (D. Or. Mar. 19, 2020) is distinguishable because defendant's allegedly tortious conduct there occurred *within* the forum state. *Id*. at *5. Likewise, the district court in *Swarts v. Home Depot, Inc.*, 689 F.Supp.3d 732 (N.D. Cal. 2023) did not apply *Paccar*; it applied the *Calder* effects test to determine whether a defendant's conduct — occurring outside California — could subject that defendant to personal jurisdiction in California. *Id*. at 741. The same was true in *Chien v. Bumble Inc.*, 641 F.Supp.3d 913, 926 (S.D. Cal. 2022). These latter cases support the application of *Calder*'s effects test here.

2. <u>Plaintiff's Purposeful Direction Arguments Are Based on Non-Existent Allegations, or Rely on Irrelevant Facts Such as Gen's Alleged Sale of Services to California Residents</u>

To carry his burden of establishing purposeful direction, Plaintiff must show that Gen: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be sustained in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Plaintiff argues here that purposeful direction is "easily established here where the code Defendant inserted into its website that was sent into California [] caused Plaintiff's computer to send out code." Opp. 8:8-9. This naked statement is tied to no allegation since none exists. Instead, his FAC alleges the operation of the code

supposedly installed by Gen *is confined to the website itself*, where this code allegedly "captures" information from website visits. So his opposition to dismissal for lack of specific personal jurisdiction is contrary to his own allegation:

| **Plaintiff's Opposition** | **Plaintiff's Operative FAC** |
|---|---|
| "Defendant inserted code into its website that was sent into California and caused Plaintiff to send out code." Opp. 8:8-9. | Defendant installed software on its website, which "captures" information regarding website visits "by running code or 'scripts' **on the Website**." FAC ¶¶ 9, 11 & 16 (emphasis added). |

Plaintiff offers a strained analogy that "Defendant's website is no different than if Defendant had placed a phone call into California to achieve the same result." Opp. 8:10-11. But following through on Plaintiff's own analogy, it was Plaintiff who placed a call to Gen *in Arizona*, not California, and it was in Arizona where Gen allegedly used the code at issue. Again, not California.

Elsewhere, Plaintiff argues that Gen "purposefully directed its activities toward the Central District by selling [services] through its Website to California residents[.]" Opp. 9:16-19. He bases this assertion on FAC ¶ 5 where he generically alleges Gen sells "antivirus, malware, ransomware, and hacking protection services." Turning to that allegation, however, he does not allege that Gen sold him any such services. Nor does he allege Gen sold its services to California residents.

So even assuming Plaintiff had alleged Gen sold its services to California residents, his allegation would still be insufficient to establish "express aiming." Gen's sale of services to California residents is not the "intentional act" from which Plaintiff drew his claims. *Dole Food*, 303 F.3d at 1111. The alleged act is Gen installed "code" on its own website. FAC ¶¶ 9–18. So, based on Plaintiff's own allegations, whether Gen sold or did not sell services to California residents is

irrelevant to the analysis.[1] *See*, *e.g.*, *Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2024 WL 1268167, at *4 (S.D. Cal. Mar. 25, 2024) ("Plaintiff has not alleged she ordered any products from Defendant's website, and even if she did, the harm she suffered was not premised on the sale … of a product. Rather, her mere browsing and use of Defendant's website is the basis for her complaint.")

By contrast, the Ninth Circuit has found that a defendant's sale of products in the forum state satisfies express aiming where a plaintiff's claims arise from a defendant's sale of trademark-infringing products on its website. *Herbal Brands v. Photoplaza*, 72 F.4th 1085, 1091 (9th Cir. 2023); *see also Martin v. Outdoor Network LLC*, No. 2:23-CV-09807-AB-AJR, 2024 WL 661173, at *4 (C.D. Cal. Jan. 31, 2024) ("In *Herbal Brands*, the sale and shipment of products to the forum state … establish[ed] express aiming in part because the sale and shipment of the products gave rise to the harm caused by the trademark infringement claims therein.") But where, as here, "other internet activity is allegedly the source of personal jurisdiction," the Ninth Circuit instructs courts to consider other factors like whether the website has a forum-specific focus, or a defendant sought to cultivate an audience within the forum. *Herbal Brands*, 74 F.4th at 1091.

Here, that "other internet activity," is Gen's alleged installation of tracking "code" on its own website. Thus, the analysis here "turns on whether the site had a forum-specific focus, or the defendant exhibited an intent to cultivate an audience in the forum." *Id. at* 1092. **Plaintiff concedes he cannot meet this criteria by admitting, as he must, that Gen "did not particularly seek out a California buyer," on its website**. Opp. 11:7-8. His concession conclusively establishes he

---

[1] The cases cited by Plaintiff in support of his argument are unpersuasive. Those cases found that a defendant's allegedly unlawful website activity was directly connected to its sale of products into the state of California. *See*, *e.g.*, *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1219 (C.D. Cal. 2024) ("plaintiff's privacy claims are related to defendant's sales to California."); *Swarts*, 689 F. Supp. 3d at 742 (plaintiff's claims arose from website chat interactions plaintiff allegedly had with defendant regarding a "physical product" that had been sold to plaintiff via defendant's website).

cannot meet his burden to satisfy purposeful direction. Plaintiff has therefore failed to establish this Court in California correctly exercises specific personal jurisdiction over Gen. If he had managed to state a claim for Rule 12(b)(6) purposes (he did not), jurisdiction would lie in Arizona, not California.

3. Plaintiff's Request for Jurisdictional Discovery Is Not Well-Taken

District Courts have broad discretion to permit or deny jurisdictional discovery. *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). It may be permitted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id*. But it is impermissible where it "would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Am. W. Airlines, Inc. v. GPA Grp.*, 877 F.2d 793, 801 (9th Cir. 1989).

In a footnote, Plaintiff asks for permission to conduct discovery into "[f]acts related to the contracts between Defendant and TikTok, the data Defendant received about Californians including Plaintiff, locations of relevant servers where data was sent and received, and the scope of Defendant's wrongdoing for Californians." Opp. 12:19-21 n.1. He gives no explanation why this information is relevant to jurisdiction here. TikTok is not a party. Nor does this information bear on whether Gen's website operation in Arizona establishes jurisdiction in California. Plaintiff's concession that its website has no forum-specific focus renders such discovery needless.

**B. The Court Should Not Adopt Plaintiff's Broad Interpretation of Penal Code § 638.51**

The Supreme Court has long warned against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants. This venerable rule furthers the fundamental principle that no citizen should be held accountable for violating a statute's uncertain commands or subjected to

punishment unclearly prescribed. The rule of lenity — rooted in due process considerations — requires courts to limit the reach of criminal statutes to the clear import of their text. *Holdings LLC v. Brekka*, 581 F.3d 1127, 1134–35 (9th Cir. 2009). Ambiguities are construed against the government. *Id.* Plaintiff's positions are contrary to these principles.

Plaintiff claims it is "irrelevant" whether Penal Code § 638.50 identifies whose line or device a trap and trace device must be installed. Opp. 14:21–15:3. The "statutory definition of a trap and trace device," he says, "requires neither a 'line' nor ownership of the device." *Id.* This argument proves Gen's point: The statutory definition of "trap and trace" does not identify on whose device the trap and trace must be installed or used. This creates ambiguity, leads to absurd results, or both.

Indeed, Plaintiff's entire case rests on his naked assertion that a "trap and trace device" encompasses software or processes that a person installs or uses *on their own device*. As illustrated by Gen's Rule 12(b)(6) motion, however, this would lead to absurd results, effectively criminalizing the use of many forms of ubiquitous technology like Caller ID. Plaintiff tries to diminish or deride Gen's Caller ID example. It involves "facts absent from the complaint," he says, and requires the "complex task of analyzing … numerous other regulations and statutes[.]" Opp. 15:6-14. Untrue.

Caller ID is not the only example illustrating the absurd results flowing from Plaintiff's interpretation. Take Apple's Siri. When an iPhone receives an incoming call, Siri detects the incoming number and, in the same way Plaintiff obliquely alleges TikTok code works — the technology cross-references the number with existing data in "other apps, such as email you receive in Mail and invitations you receive in Calendar, "to identify the caller."[2] By Plaintiff's interpretation, every

[2] See https://support.apple.com/en-sg/guide/iphone/iph3e0ca2db/ios#:~:text=Siri%20also%20suggests%20new%20contacts,turn%20off%20Show%20Contact%20Suggestions.

Californian with an iPhone is guilty of a crime since Siri captures the originating number of a wire or electronic communication and "identif[ies] the source" of that communication. Cal. Penal Code § 638.50(c).

Plaintiff also argues that a trap and trace device is not limited to devices installed on telephone lines. Opp. 15:18–16:10. Though his position contradicts the statute's legislative history, it leads us to other examples of more technology that would be outlawed under his overly broad interpretation. For example, each email processed by Outlook or Gmail has a header revealing the sender's email address. If a trap and trace device were interpreted, as Plaintiff's interpretation suggests, to include a device installed on anyone's own computer or phone, then all these applications are trap and trace devices under the law because they reveal the sender's email addresses — i.e., they are identifying the "source of a wire or electronic communication." Penal Code § 638.50(c).

Plaintiff asserts there is "nothing absurd," about this. He tries to justify his position by claiming "[t]he California Legislature and courts have in fact both been quite clear on how CIPA should be interpreted — broadly." Opp. 15:8-9 & 18:19-20. But the lone authority he cites for this proposition says no such thing. Even if it did, it would violate the settled rule that criminal statutes must be strictly — not broadly — construed. *Dunlop v. Tremayne*, 62 Cal.2d 427, 429 (Cal. 1965).

Although Plaintiff cites a smattering of district court (and even uncitable California *trial court* orders) he claims support his interpretation, none is precedent. And all but one of the district court rulings he cites interpreted the definition of a "pen register" — not a trap and trace device — and, unlike here, arose from allegations that a defendant installed tracking software on a plaintiff's device, not on a defendant's own website server. *Greenley v. Kochava*, 684 F.Supp.3d 1024, 1035 (S.D. Cal. 2023); *Shah v. Fandom*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024); *Mirmalek v. Los Angeles Times*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *1 (N.D. Cal. Dec. 12, 2024). Those cases

are thus not only distinguishable, but they are neither binding authority nor persuasive. That leaves *Moody v. C2 Educ. Sys. Inc.,* 2024 WL 3561367 (C.D. Cal. July 25, 2025) which is likewise unpersuasive for the reasons Gen already discussed. Mot. 28:21–29:3.

Finally, Plaintiff claims "Defendant must have missed" various state trial court orders concluding that "the Trap and Trace Law applies to internet communications." Opp. 20:13-21. If these orders were properly citable (*but see*, Cal. Ct. R. 8.1115), then Plaintiff equally missed orders by state trial court judges concluding Penal Code § 638.51 is inapplicable to website software that collects or records information like IP addresses or browsing activity. *See*, *e.g.*, *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *5 (Cal. Super. Sep. 09, 2024); *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Oct. 02, 2024).

But *none* of the authorities cited by Plaintiff address whether a trap and trace device is software that one installs or uses *on one's own device*. If the answer is "yes," then that would criminalize iPhones, Caller ID, email applications, and many other modern-day technologies capable of identifying the source of incoming telephonic or electronic communications. This is the opposite of what California's fundamental rules of statutory construction require as examined in Gen's motion.

## III. <u>CONCLUSION</u>

For all these reasons, Gen respectfully asks the Court to grant its motion to dismiss under Rule 12(b)(2) for lack of jurisdiction, or under Rule 12(b)(6) for failure to state a claim.

Respectfully submitted,

Dated: January 10, 2025

BUCHALTER, A Professional Corporation

By: /s/*Artin Betpera*
ARTIN BETPERA

*Attorneys for Defendant and Movant*
GEN DIGITAL, INC.